[No. A037969. First Dist., Div. Three. May 30, 1989.]

ROSELLA MANDICINO, Plaintiff and Respondent, v.
CHARLOTTE MAGGARD, as City Clerk, etc., Defendant;
TERRY CATER, Real Party in Interest and Appellant.

COUNSEL

John E. Mueller, James R. Parrinello, Marguerite Mary Leoni, Jewell J. Hargleroad and Nielsen, Merksamer, Hodgson, Parrinello & Mueller for Real Party in Interest and Appellant.

W. Craig Biddle, Warren C. Stracener, Biddle & Hamilton, Fred L. Main, William M. Pfeiffer, June Babiracki Barlow and Judith K. Herzberg as Amici Curiae on behalf of Real Party in Interest and Appellant.

Mark Goldowitz, Richard M. Pearl and Philip Bertenthal for Plaintiff and Respondent.

**OPINION**

**MERRILL, J.**—The sole issue presented by this appeal is whether the trial court abused its discretion in awarding attorney fees under section 1021.5 of the Code of Civil Procedure.[1]

Respondent Rosella Mandicino filed a petition for writ of mandate under Elections Code section 5025, against the San Pablo City Clerk, challenging as false and misleading six ballot arguments submitted by appellant Terry Cater in opposition to Measure C in the June 1986 municipal election. The alternative writ issued and a hearing date was set. At the hearing the court ordered modifications in four statements of the ballot argument and the writ was issued to this effect. In the judgment granting the peremptory writ of mandate the court reserved jurisdiction to determine Mandicino's entitlement to costs and the amount of costs. Thereafter, six months after the election,[2] Mandicino filed a motion for attorney fees pursuant to section 1021.5, the private attorney general statute. The motion was granted and Cater was ordered to pay Mandicino $14,432 for attorney fees. Cater appeals.

I

Measure C, the Mobilehome Residents Protection Ordinance, was an initiative measure on the June 1986 ballot for San Pablo. Cater submitted an argument against the measure which was to be printed in the local ballot pamphlet.

Pursuant to our Elections Code, individual voters or citizen groups may file written arguments for or against any city measure in municipal elections. The arguments are to be printed at city expense and included with the sample ballots mailed to registered voters. (Elec. Code, § 5013.) Section 5025 of the Elections Code provides for a 10-calendar-day public examination period, prior to submission of the materials for printing. The section also permits a voter or the city clerk to seek a writ of mandate or injunction for the amendment or deletion of the material, on the ground that it is false and misleading.

Mandicino, a sponsor and proponent of the initiative, sought the deletion of six statements in Cater's argument as false and misleading under Elections Code section 5025. None of the six statements in the ballot argument were deleted by the trial court. Four of the six statements were amended

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] Measure C was defeated in the election.

and two were left intact. Cater suggested and the court accepted three possible modifications as alternatives to deleting the challenged statements. The trial court proposed the fourth amendment and Cater agreed to the change. Mandicino, on the other hand, continued to object to all six statements notwithstanding the court's amendment of four of the statements.

## II

Cater contends Mandicino was not entitled to an award of attorney fees under section 1021.5, as one of the statutory prerequisites for such an award has not been met in this case. Specifically she argues a significant benefit was not conferred upon the general public as a result of the issuance of the peremptory writ. Cater maintains that the de minimis modifications to the statements of opinion in the ballot argument did not benefit the public. We agree and reverse the judgment.

Section 1021.5, the codification of the private attorney general doctrine, authorizes an award of attorney fees to a "successful party" in an action if "(1) the action 'has resulted in the enforcement of an important right affecting the public interest'; (2) 'a significant benefit . . . has been conferred on the general public or a large class of persons';[3] (3) 'the necessity and financial burden of private enforcement are such as to make the award appropriate'; and (4) 'such fees should not in the interest of justice be paid out of the recovery . . . .'" (See *Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 166 [188 Cal.Rptr. 104, 655 P.2d 306].) The fundamental objective of this statute is " ' "to encourage suits effectuating a strong [public] policy by awarding substantial attorney's fees . . . to those who successfully bring such suits . . . ." ' " (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200].)

Under the statute, "the trial court, utilizing its traditional equitable discretion . . . must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award under a private attorney general theory." (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at p. 938.) We have determined that the modifications made to Cater's ballot argument were minimal in nature and cannot be considered to have conferred a significant benefit to the public. The award of attorney fees in the instant case constituted an abuse of discretion. (See *Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 317 [193

---

[3] For purposes of the case at bench, the "general public" and "a large class of persons," the voters of San Pablo, are one and the same.

Cal.Rptr. 900, 667 P.2d 704] [applying abuse of discretion standard to court's order awarding attorney fees].)

*Significant benefit*

Our courts recognize that the public has a substantial interest in ensuring the enforcement of the laws and that it truly derives a "benefit" whenever illegal conduct has been abated. (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at p. 939.) ■ However, in enacting section 1021.5, the "Legislature did not intend to authorize an award of attorney fees in *every* case involving a statutory violation." (*Id.,* at p. 939, italics added.) ■ Instead, in deciding whether to award attorney fees under the statute, a trial court should determine realistically the significance of the benefit, and the size of the class receiving the benefit, in light of all pertinent circumstances. (*Id.,* at pp. 939-940.)

■ In realistically assessing the circumstances of the instant litigation, we have concluded that the relief granted during the proceedings below constituted de minimis changes to statements of opinion, failing to result in a significant benefit to the public.

We first analyze the opinion character of the amended statements. The context in which a statement is made is critical to whether it is understood as a statement based on fact or an expression of the speaker's opinion. In *Gertz* v. *Robert Welch, Inc.* (1974) 418 U.S. 323, 339-340 [41 L.Ed.2d 789, 94 S.Ct. 2997], the high court made the oft-quoted pronouncement, "Under the First Amendment there is no such thing as a false idea." A statement in a ballot argument is generally understood by the voting public to be the opinion of the writer. In *Chavez* v. *Citizens for a Fair Farm Labor Law* (1978) 84 Cal.App.3d 77, 82 [148 Cal.Rptr. 278], a defamation action, the court reasoned that "[s]tatements made in [the context of initiative issues] generally are, and should be, treated as opinions. This is particularly true when they concern an initiative measure. Almost all, if not all, statements concerning the *effect* or *application* of an initiative can only be the opinion of the interpreter and the voting public is generally aware of this." In fact, pursuant to statute, a ballot argument must be clearly labeled as the opinion of the author. (Elec. Code, § 4015.)

It is instructive here to set forth each challenged statement and the modification ordered by the court. It should be noted that as to each statement, Mandicino sought deletion.

The first challenged statement read as follows: "Mobilehome Park tenants cannot expect any relief from the park owner if their neighbors are

violent, destructive, or noisy because this measure effectively removes the right of the owner to evict tenants right away." With Cater agreeing and Mandicino still objecting, the court modified this to read: "Mobilehome Park tenants cannot expect relief from the park owner if their neighbors are violent, destructive, or noisy because this measure increases the time for the owner to evict tenants." The word "any" and "right away" were the only words deleted. The court interpreted the statement to be an opinion and rejected Mandicino's contention that despite the modification the statement was still misleading to the voters. It is clear that the meaning of the statement was altered only slightly, if at all. The thrust of the message remains the same. The amendment does not change the opinion character of the statement. Any voter reading both statements would not detect a significant difference.

The second statement formerly read: "This measure mandates lifetime leases which are unconstitutional." It was changed as follows: "This measure requires, under specified circumstances, that tenants be offered lifetime leases, which may be unconstitutional." While the definitive tenor of the statement was diminished, the meaning remained much the same. Certainly, the phrase "under specified circumstances" added little to the implication from the statement. Moreover, in the context of an initiative, a ballot argument which states that something "will" be unconstitutional rather than it "may" be unconstitutional, is obviously still an expression of the writer's opinion. This was recognized by the trial court and would certainly be understood by the voters. The modification is insignificant. Here again, even with the modification, Mandicino continued to object on a basis that the statement was false and misleading.

The third statement modified by the court provided: "The text of this measure is so ill-conceived that its financial impact to San Pablo will be in the hundreds of thousands of dollars . . . ." The only change ordered here was the replacement of the word "will" with "may." Cater readily agreed to this change proposed by the court. The court determined the change was necessary as the unmodified statement implied that an empirical basis existed for the statement. However, such a change does not affect the opinion character of the statement. Both the modified version and the unmodified version are expressions of opinion. In the political arena it is commonplace for an opinion to say that a particular result "will" take place. Claims as to the financial impact of an initiative are generally statements of opinion. We also note, that once again the amended version did not satisfy Mandicino and she vigorously opposed it in argument to the trial court.

The final modification was to the following sentence: "This measure will not protect anyone." The court accepted Cater's proposed modification and

ordered the statement to read: "This measure will not protect anyone in the long run." The court noted that, as modified, the statement was a matter of opinion. We agree, but we also believe it was a matter of opinion prior to the modification. Clearly, a statement as to the future protections realized from a measure are predictions only.

In sum, de minimis modifications to opinion statements in the ballot argument failed to confer a significant benefit upon San Pablo voters. The modifications ordered by the court were minor editorial changes to the language of Cater's argument. The meaning of the argument or its implications were not substantially altered. The changes were a far cry from the deletions sought by Mandicino.

### III

In addition, we find that the modifications ordered in the instant case were not required by Elections Code section 5025 and therefore did not result in a significant public benefit. Mandicino urges that the significant benefit derived by the public here was the deletion of false and misleading ballot arguments. This result was never achieved by the litigation. The relief sought initially by Mandicino, the deletion of the statements in their entirety, was never achieved. The amendments ordered here did not result in the deletion of false or misleading statements. Minute editorial changes to opinion statements in ballot arguments do not serve the purpose of deleting false and misleading information. Even where the court's action results in an improved or preferable argument, it does not necessarily follow that a significant benefit is bestowed upon the public when the initial statement was satisfactory.

Mandicino cites this division's opinion in *Washburn* v. *City of Berkeley* (1987) 195 Cal.App.3d 578, 585 [240 Cal.Rptr. 784], as controlling authority for the proposition that changes to ballot arguments automatically confer a significant benefit to the public by eliminating false and misleading statements, thereby permitting a section 1021.5 attorney fee award. We do not interpret *Washburn* in this manner.

The ballot arguments challenged in *Washburn* were as follows: " '. . . they continue to defend their *illegal* recycling contract award . . .' " and " '. . . they *illegally* awarded a recycling contract . . .' " and " '[t]hey staged an illegal break-in at the Berkeley Recycling Center.' " (*Washburn* v. *City of Berkeley, supra,* 195 Cal.App.3d at p. 583, italics added.) The court ordered the words "illegal" and "illegally" deleted from the first two sentences and the third sentence deleted entirely. An award of attorney fees, under section 1021.5, was affirmed on appeal. We noted the "Legislature

has expressed its determination that the state has a strong interest in providing the electorate with accurate information in voter pamphlets." (*Washburn, supra,* at p. 585.) We concluded that in deleting the inaccurate statements contained in the arguments, the public's interest had been served and an attorney fee award was proper. (*Id.,* at pp. 585-586.)

Accusations of illegal conduct leveled at individuals in the opposing camp is readily distinguishable from an expression of views on the merits of the initiative itself. (See *Gregory* v. *McDonnell Douglas Corp.* (1976) 17 Cal.3d 596, 604 [131 Cal.Rptr. 641, 552 P.2d 425] [noting that in libel action First Amendment protection is not afforded to accusations of criminal conduct or dishonesty]; accord *Blackhawk Corp.* v. *Ewing* (1979) 94 Cal.App.3d 640, 643 [156 Cal.Rptr. 581].) Unlike *Washburn,* the amended statements in Cater's ballot argument were not a reference to any alleged illegal activity. The statements were opinions about the future effects upon the community if the measure was enacted. Clearly, charges that an individual or group has committed a crime are subject to proof of their truth or falsity. In contrast, opinion statements concerning the potential benefit or harm from an initiative measure are not. *Washburn* is inapplicable to the instant facts.

## IV

The judgment awarding attorney fees is reversed. Cater is awarded her costs on appeal.

Barry-Deal, Acting P. J., and Strankman, J., concurred.

A petition for a rehearing was denied June 29, 1989.