[No. A044618. First Dist., Div. Three. Apr. 6, 1990.]

GRANT KING et al., Plaintiffs and Appellants, v.
EEVE LEWIS, as County Clerk, etc., Defendant and Respondent;
JAMES BOTZ, as County Counsel, etc., Real Party in Interest and
Respondent.

**COUNSEL**

Joseph Baxter and Larney Boggs for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

James P. Botz, County Counsel, in pro. per., and Jill D. Golis, Deputy County Counsel, for Real Party in Interest and Respondent.

**OPINION**

**MERRILL, J.**—Appellants Grant King, Mary Robertson, and Frank Sanchietti filed a petition for writ of mandate to compel respondent Sonoma County Counsel James Botz to delete or amend an impartial analysis prepared for a county referendum, "Measure B," for the June 7, 1988, election. The trial court issued a peremptory writ of mandate, ordering three revisions to be made to the impartial analysis. After the election, appellants

moved for attorney fees under Code of Civil Procedure section 1021.5,[1] the private attorney general statute, which request was denied.

Appellants' sole contention on appeal is that the trial court's denial of attorney fees constituted reversible error.

I

Measure B encompassed the "Sonoma County Clean Water Ordinance," which was first passed by the county electorate as an initiative in the 1952 election. Generally, the ordinance prohibited discharges into any county river or stream which are hazardous to public health, wildlife or plant life. Additionally the ordinance prohibited the depositing of any debris or effluent from any "source or operation" which decreases the clarity of any county river or stream. Also prohibited were "work or operations" which decrease water clarity. Under the ordinance, certain gravel works or operations were permitted in accordance with a permit process.

In 1981, the Sonoma County Board of Supervisors placed the ordinance on the ballot for repeal and the electorate voted to repeal it. However, proponents of the ordinance sought to invalidate the election in a declaratory relief action. Judgment for plaintiff was entered on one cause of action on the basis that the county clerk had failed to publish adequate notice of the opportunity to submit ballot arguments. A demurrer was sustained as to the remaining four causes of action. Following the opinion of this division of the First Appellate District reversing the sustaining of the demurrer, the parties entered into a stipulated judgment in which the repealed ordinance would be placed before the voters again. The county counsel's impartial analysis as well as ballot arguments for and against the measure were accepted for publication in the sample ballot mailed to the electorate. Measure B passed in the election.

Prior to the election, by their petition for writ of mandate, appellants, as proponents of the measure, sought amendment or deletion of the impartial analysis[2] on the ground that it was "misleading in its entirety," "false in several sections," biased and otherwise not in compliance with Elections Code section 3781, subdivision (b). This statute provides in part: "The county counsel or district attorney shall prepare an impartial analysis of the measure showing the effect of the measure on the existing law and the operation of the measure. The analysis shall be printed preceding the arguments for and against the measure."

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] See appendix A of this opinion for the full text of the impartial analysis in its initial form.

In particular, appellants challenged the following statements: (1) "This measure could prohibit activities ranging from discharge of municipal effluent to recreation activities which temporarily muddy a waterway." (2) "A legal question exists as to whether portions of Measure B conflict with state laws . . . ." (3) "[A] substantial legal question exists as to whether prohibited activities are adequately defined to permit enforcement." (4) "Activities which decrease water clarity would also be prohibited unless allowed by permit." (5) "Measure B would prohibit, without regard to economic impact, all activities which cause conditions in county rivers or streams which are detrimental to fish, bird, or plants or which may injure public health." (6) "Under most existing laws, waste discharges and other activities affecting waterways may be allowed if the effect on water clarity or wildlife is reasonable. These laws require that the impacts on water quality be balanced with economic impacts. In contrast, Measure B, would unconditionally prohibit some activities affecting water clarity and all activities which create conditions which are detrimental to fish, plant and bird life or may be injurious to public health, without regard to economic impacts."

The trial court ordered the county clerk to make changes in three of the challenged statements. From the first statement set forth above, the word "activities" was replaced with the word "operations." It would now read: "This measure could prohibit activities ranging from discharge of municipal effluent to recreational *operations* which temporarily muddy a waterway." The word "substantial" was deleted from the third statement above. With the change it stated: "[A] legal question exists as to whether prohibited activities are adequately defined to permit enforcement." In the fourth statement above, the word "activities" was replaced with "operations." The sentence now stated: "*Operations* which decrease water clarity would also be prohibited unless allowed by permit." No change was ordered with respect to the balance of the statements challenged.

In denying appellants' attorney fees motion, the court determined that the three changes to the impartial analysis did not satisfy the requirements of section 1021.5.

■ Appellants argue that the trial court improperly determined that an award of attorney fees under section 1021.5 was not warranted. They maintain that as a matter of law the changes ordered to the impartial analysis fulfilled the criteria set forth by the statute. We find no error in the denial of attorney fees.

## II

Section 1021.5 provides for an award of attorney fees to a "successful party" where "(1) the action 'has resulted in the enforcement of an

important right affecting the public interest'; (2) 'a significant benefit . . . has been conferred on the general public or a large class of persons'; (3) 'the necessity and financial burden of private enforcement are such as to make the award appropriate'; and (4) 'such fees should not in the interest of justice be paid out of the recovery . . . .' " (See *Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 166 [188 Cal.Rptr. 104, 655 P.2d 306].) In the instant case, the court found that the grant of the writ did not fulfill the first two criteria.

█ In ruling on a section 1021.5 motion for attorney fees, the trial court, " 'utilizing its traditional equitable discretion . . . must realistically assess the litigation and determine, from a practical perspective' " whether the statutory criteria have been met. (*Baggett* v. *Gates* (1982) 32 Cal.3d 128, 142 [185 Cal.Rptr. 232, 649 P.2d 874], citing *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 938 [154 Cal.Rptr. 503, 593 P.2d 200].) The trial court's ruling will be reversed only if there has been a prejudicial abuse of discretion. (*Baggett* v. *Gates, supra*, 32 Cal.3d at pp. 142-143.)

█ We have determined the trial court had a reasonable basis for determining that the litigation did not enforce an important right affecting the public interest nor confer a significant benefit upon the public. The court reasoned that the two word changes and one word deletion achieved by the writ were "relatively insignificant" when compared to the totality of relief sought by appellants. Additionally, the court analyzed that the impartial analysis was not a significant aspect in the election.

Appellants contend that the public's right to an accurate impartial analysis, under Elections Code section 3781, subdivision (b), constitutes an important right within the meaning of section 1021.5. We do not disagree. Our courts recognize the importance of an impartial ballot summary to the election process and to interpretation of legislative intent thereafter. (*Washburn* v. *City of Berkeley* (1987) 195 Cal.App.3d 578, 585 [240 Cal.Rptr. 784]; see also *Brennan* v. *Board of Supervisors* (1981) 125 Cal.App.3d 87, 93 [177 Cal.Rptr. 677], citing *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 243 [149 Cal.Rptr. 239, 583 P.2d 1281].)

However, in this instance the two word changes and one deletion did nothing to significantly alter the meaning of the impartial analysis. A primary basis of appellants' challenge to the entirety of the analysis was that it erroneously included recreational activities which decrease water clarity as one of the operations prohibited by the measure. In granting the writ, the trial court did not omit from the impartial analysis all reference to

recreation. It only changed the term "recreational activities" to "recreational operations." Contrary to appellants' urging, this is a distinction with little difference when considered in the overall context of impartial analysis.

Next, we find the striking of the word "substantial" from the phrase "a substantial legal question" did not constitute a significant change in the meaning of the sentence. Both before and after the omission, the gist of the sentence was that a legal *question* existed as to the enforceability of the measure due to the manner in which the prohibited activities were defined. When the top legal advisor for the county says that a legal question exists, certainly a voter would view it as a substantial question without being so informed.

Finally, by replacing the word "activities" with the word "operations" in the third change ordered, the trial court was merely tracking the language set forth in the measure. "Operations" was the exact term used by the measure itself in the provision referred to in the county counsel's statement. Use of the word "operations" was simply more precise than "activities." The trial court reasonably concluded this did not constitute a significant change to the meaning of the impartial analysis.

The instant case is distinguishable from *Washburn,* which involved the deletion from a ballot argument of blatantly false statements that opponents of the measure had acted illegally. The changes were ordered pursuant to Elections Code section 5025 which permits any voter to seek amendment or deletion of false and misleading statements in ballot arguments by writ of mandate or injunction. The Court of Appeal in *Washburn* affirmed the award of section 1021.5 attorney fees to the party who successfully obtained the writ of mandate, reasoning that the public derived a substantial benefit from such successful Elections Code section 5025 actions. (*Washburn* v. *City of Berkeley, supra*, 195 Cal.App.3d at p. 585.)

In contrast, none of the language changes here demonstrated that the analysis had been misleading or biased. The changes did not significantly alter the connotation of the impartial analysis. We find no abuse of discretion in the trial court's denial of attorney fees in this case.[3]

---

[3] Respondent also relies on our opinion in *Mandicino* v. *Maggard* (1989) 210 Cal.App.3d 1413 [258 Cal.Rptr. 917], which reversed an attorney fee award for language changes ordered to a ballot argument under Elections Code section 5025. *Mandicino* is not controlling in the instant case, however, as it involved opinion statements in a ballot argument and not the required impartial analysis a county counsel must prepare under Elections Code section 3781, subdivision (b).

The judgment is affirmed.

Barry-Deal, Acting P. J., and Strankman, J., concurred.

A petition for a rehearing was denied May 4, 1990, and appellants' petition for review by the Supreme Court was denied June 27, 1990.

---

APPENDIX A

COUNTY COUNSEL'S
IMPARTIAL ANALYSIS
OF
COUNTY MEASURE B

A majority "yes" vote would enact Measure B.

Measure B would prohibit, without regard to economic impact, all activities which cause conditions in county rivers or streams which are detrimental to fish, birds, or plants or which may injure public health. Activities which decrease water clarity would also be prohibited unless allowed by permit. Subject to environmental laws, permits could be granted for some specified activities such as streamside construction, certain gravel operations, and recreation dams, if the Board of Supervisors found by a four-fifths vote that the activities were necessary and would not unreasonably decrease water clarity. Permits could control the timing and manner of activities and would be valid for thirty days.

Violations of the Measure would be public nuisances, subject to civil and criminal prosecution by the District Attorney. Fines up to $500 and up to six months imprisonment could be imposed.

### Existing Law

A number of existing federal, state, and local laws also regulate activities which affect waterways.

Existing water quality laws are enforced by the state and require permits for all waste discharges. These permits contain requirements to protect all beneficial uses of water including drinking, recreation and wildlife protection.

Existing fish and game laws prohibit the discharge of certain substances which harm fish or wildlife. Projects which change streamflow or streambeds and may harm fish or wildlife must include protective measures. Permits are also required for many gravel mining activities. These permits contain conditions to protect rivers and streams.

Existing toxics laws prohibit discharge of specified chemicals. Health and safety laws regulate discharge of many contaminants, including sewage, into waterways.

Penalties for violating existing laws include clean up orders, civil fines, criminal fines and imprisonment. For example, violations of state water quality laws could result in $25,000 per

day of illegal discharge. Many fish and game law violations may be punished by fines of up to $500 and six months imprisonment.

### Effect of Measure B on Existing Law

Under most existing laws, waste discharges and other activities affecting waterways may be allowed if the effect on water clarity or wildlife is reasonable. These laws require that the impacts on water quality be balanced with economic impacts.

In contrast, Measure B, would unconditionally prohibit some activities affecting water clarity and all activities which create conditions which are detrimental to fish, plant, and bird life or may be injurious to public health, without regard to economic impacts.

This measure could prohibit activities ranging from discharge of municipal effluent to recreation activities which temporarily muddy a waterway. The District Attorney would have the discretion to determine when to bring enforcement actions and would consider whether wildlife damage or effect on water clarity could be proven.

A legal question exists as to whether portions of Measure B conflict with state laws, and a substantial legal question exists as to whether prohibited activities are adequately defined to permit enforcement.

State law may exempt certain commercial agricultural activities from the public nuisance provisions of this measure.

JAMES P. BOTZ
County Counsel