13 Cal.App.4th 1763 (1993)
17 Cal. Rptr.2d 457
DIANA P. HULL et al., Plaintiffs and Respondents,
v.
LILLY ROSSI, as City Clerk, etc., Respondent; JOANNE M. MILLER et al., Real Parties in Interest and Appellants.
Docket No. B061652.
Court of Appeals of California, Second District, Division Six.
March 9, 1993.
*1764 COUNSEL
James P. Ballantine and Philip A. Seymour for Real Parties in Interest and Appellants.
*1765 No appearance for Respondent.
Diana P. Hull and Howard B. Walsh, in pro. per., for Plaintiffs and Respondents.
OPINION
STONE (S.J.), P.J.
Here we hold that the trial court abused its discretion in denying attorney fees to real parties in interest for defense of a writ of mandate brought pursuant to Elections Code section 5025. We reverse the trial court's order.
Jeffrey Young and Joanne Miller appeal from denial of their motion for attorney fees under Code of Civil Procedure section 1021.5.[1] In the spring of 1991 a fierce electoral battle took place in the City of Santa Barbara (City) concerning the future of the City's water supply. Appellants signed two ballot arguments which appeared in the official voters' pamphlet for the June 4, 1991 special election. Their argument supported Measure "S-91," which advocated development of a water desalination plant by the City as an alternative to importation of water from northern California through the state water project. Appellants' argument against Measure "T-91" opposed a bond measure to fund City participation in the state water project.
Respondents Diana P. Hull and Howard B. Walsh are members of "We Want Water" (WET), which sponsored, funded and supported Measure T-91. Respondents and WET filed a petition for writ of mandate in the superior court, pursuant to Elections Code section 5025, seeking to have 18 separate statements stricken from appellants' ballot arguments as "false and misleading." The city clerk was named as respondent in the petition, and appellants were named as real parties in interest, pursuant to Elections Code section 5025.
Respondents' petition for writ of mandate contained a declaration of James Stubchaer, a former local water official, chairman of the regional water quality control board (Central Coast Region), and former president of the state water contractors, an organization which advises on the administration of the state water project. Mr. Stubchaer gave his opinion why he found appellants' ballot arguments "false and misleading."
Appellants were served with the petition and notice of ex parte hearing scheduled for three o'clock that same afternoon. Appellants obtained three *1766 local environmental attorneys to appear and request dismissal of the petition. The court refused to dismiss the petition and ordered appellants to appear for a hearing four days later to show why the court should not delete their ballot argument statements under attack. Appellants were required to prepare and submit their written response within three days. Appellants' attorneys prepared their answer to the petition, responsive memorandum of points and authorities, responsive declarations, and over 300 pages of exhibits supporting the ballot arguments. Respondents, over objection, filed lengthy additional evidentiary materials.
At the hearing, the trial court rejected 14 of respondents' claims and ordered the following minor wording changes in the remaining 4 statements:
1. The statement "The pipeline will cost $42,000,000" shall be replaced with "The pipeline will actually cost $42,000,000."
2. The heading "RELIABILITY: THERE IS NO STATE WATER" shall be replaced with "RELIABILITY: THERE IS NOT ENOUGH STATE WATER."
3. The statement "Before the drought, the Los Angeles Water District `was a build, build agency. New projects, new canals.'" shall be replaced with "Before the drought, the Los Angeles Metropolitan Water District `was a build, build agency. New Projects, new canals.'"
4. The statement "By approving Measure S, we can have desal in less than two years" shall be replaced with "By approving Measure S, we can have a permanent desal plant." (Changes underlined.)
Following the trial court's ruling on respondents' petition for writ of mandate, both sides claimed victory and sought attorney fees and costs under section 1021.5, the "private attorney general" doctrine.[2] The trial court denied both motions, ruling that "[n]o significant benefit was conferred by anybody. All this was is a temporary media net." Insofar as respondents' motion was concerned, the court characterized the changes made in the ballot arguments as minor, inconsequential, "a piffle," and a "SLAP" suit. (Italics added.) Concerning both motions, the court stated that it did not think an important public policy was vindicated in this particular case. Respondents did not appeal the ruling.

DISCUSSION

1. Policy Underlying Section 1021.5 and Standard of Review

Section 1021.5 is a codification of the private attorney general doctrine adopted by the California Supreme Court in Serrano v. Priest (1977) 20 *1767 Cal.3d 25 [141 Cal. Rptr. 315, 569 P.2d 1303] (Serrano III). This section allows an award of attorney fees to "a successful party" in an action which has resulted in the enforcement of an important right affecting the public interest if: a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, the necessity and financial burden of private enforcement make the award appropriate, and such fees should not in the interest of justice be paid out of any recovery. (§ 1021.5; Press v. Lucky Stores, Inc. (1983) 34 Cal.3d 311, 317-318 [193 Cal. Rptr. 900, 667 P.2d 704].)
(1a) The fundamental objective of the private attorney general theory is to encourage suits effecting a strong public policy by awarding substantial attorney fees to those whose successful efforts obtain benefits for a broad class of citizens. (Woodland Hills Residents Assn., Inc. v. City Council (1979) 23 Cal.3d 917, 933 [154 Cal. Rptr. 503, 593 P.2d 200].) Without a vehicle for award of attorney fees, private actions to enforce important public policies will frequently be infeasible. (Baggett v. Gates (1982) 32 Cal.3d 128, 142 [185 Cal. Rptr. 232, 649 P.2d 874].)
(2) The decision to award attorney fees rests initially with the trial court: utilizing its traditional equitable discretion, the trial court must "`realistically assess the litigation and determine, from a practical perspective,'" whether the statutory criteria have been met. (Baggett v. Gates, supra, 32 Cal.3d 128, 142; Mandicino v. Maggard (1989) 210 Cal. App.3d 1413, 1416 [258 Cal. Rptr. 917].) We review the entire record, attentive to the trial court's stated reasons in denying the fees and to whether it applied the proper standards of law in reaching its decision. (Bouvia v. County of Los Angeles (1987) 195 Cal. App.3d 1075, 1081-1082 [241 Cal. Rptr. 239].) We will reverse the trial court's decision only if there has been a prejudicial abuse of discretion, i.e., when there has been a manifest miscarriage of justice or "`where no reasonable basis for the action is shown.'" (Baggett, supra, at pp. 142-143.)

2. Abuse of Discretion Shown

(3a) Appellants assert that they have fully satisfied each of the necessary elements to entitle them to an award of fees under section 1021.5. They contend they were the prevailing party and thus met the threshold requirement of being the "successful party" in the action. They point out that a prevailing defendant as well as a prevailing plaintiff may recover under section 1021.5, that fees may be assessed against a private party, and that the action vindicated the public interest in a full, uncensored ballot argument and in citizen participation in public debate. They also assert that the trial *1768 court erred in stating, in essence, that any reasonable judge would have ruled similarly without the extensive defense undertaken by appellants.
The public's right to an accurate impartial analysis under Elections Code section 3781, subdivision (b), constitutes an important right within the meaning of section 1021.5. (King v. Lewis (1990) 219 Cal. App.3d 552, 556 [268 Cal. Rptr. 277].) The state has a strong interest in providing the electorate with accurate information in the voter pamphlets. (Washburn v. City of Berkeley (1987) 195 Cal. App.3d 578, 585 [240 Cal. Rptr. 784].) Since this pamphlet accompanies the ballot, it appears to give an imprimatur of official approval to its contents and is likely to carry greater weight in the minds of the voters than normal campaign literature. (Ibid.; see also Patterson v. Board of Supervisors (1988) 202 Cal. App.3d 22, 30 [248 Cal. Rptr. 253].)
Pursuant to the Elections Code, individual voters or citizen groups may file written arguments for or against any city measure in municipal elections and section 5025 permits a voter or city clerk to seek a writ of mandate or injunction for the amendment or deletion of the material on the ground that it is false or misleading. (Mandicino v. Maggard, supra, 210 Cal. App.3d 1413, 1415.) However, modifications made in the ballot arguments pursuant to such a petition for writ of mandate that are minimal in nature cannot be considered to have conferred a significant benefit to the public. (Id., at p. 1416; King v. Lewis, supra, 219 Cal. App.3d 552, 556; Washburn v. City of Berkeley, supra, 195 Cal. App.3d 578.)
Appellants are correct that section 1021.5 draws no distinctions between plaintiffs and defendants as a "successful party." (County of San Luis Obispo v. Abalone Alliance (1986) 178 Cal. App.3d 848, 869 [223 Cal. Rptr. 846]; City of Sacramento v. Drew (1989) 207 Cal. App.3d 1287, 1302 [255 Cal. Rptr. 704].) They are equally correct that "[a] prospective private attorney general should not have to rely on the prospect that the court will do the right thing without opposition." (City of Sacramento v. Drew, supra, 207 Cal. App.3d at 1301.)
(1b) The trial court need not rule in favor of petitioners on every single issue litigated for petitions to be "successful" within the meaning of section 1021.5. (Slayton v. Pomona Unified School Dist. (1984) 161 Cal. App.3d 538, 546 [207 Cal. Rptr. 705]; Folsom v. Butte County Assn. of Governments (1982) 32 Cal.3d 668, 685 [186 Cal. Rptr. 589, 652 P.2d 437].) (3b) Appellants assert that the "overwhelming result of the litigation was to reject respondents' efforts at censorship and vindicate appellants' rights to present, and the public's right to receive, information and argument concerning two controversial ballot initiatives." Appellants' argument has merit. In defending the action, they achieved a victory that was substantial and which qualifies appellants as prevailing parties under section 1021.5.
*1769 The court found the changes made minor, and the record supports such a ruling. The court described respondents' challenges to the ballot arguments as minor, inconsequential and a "piffle." The court also characterized it as a "SLAP" suit, i.e., one brought to intimidate and for purely political purposes. The trial court was also correct in that regard. Review of the changes the court made confirms how insubstantial they were. The right to seek deletion of false and misleading ballot arguments should not be used as a weapon against differing  as opposed to misleading  opinions.
The court correctly found respondents' challenges minor. It abused its discretion in holding that any court would have so found without the aid of appellants' attorneys. That is clearly speculative. Denying appellants' request for attorney fees would have a chilling effect on citizens' willingness to participate in preparation of ballot arguments. The awarding of reasonable attorney fees to appellants will discourage the filing of "SLAP" lawsuits and "piffles" which chill the political process.
The trial court's order is reversed and remanded for a hearing on the reasonable amount of attorney fees. Costs and fees to appellants.
Gilbert, J., concurred.
YEGAN, J.
I respectfully dissent. Appellants have not demonstrated that the trial court abused its discretion in not awarding attorney fees as a matter of law. The majority has simply substituted its discretion for that of the trial court.
"`"The term [judicial discretion] implies absence of arbitrary determination, capricious disposition or whimsical thinking. It imports the exercise of discriminating judgment within the bounds of reason. [Par.] To exercise the power of judicial discretion all the material facts in evidence must be both known and considered, together also with the legal principles essential to an informed, intelligent and just decision." [Fn. omitted.]' (In re Cortez (1971) 6 Cal.3d 78, 85-86....)" (In re Marriage of Martin (1991) 229 Cal. App.3d 1196, 1200 [280 Cal. Rptr. 565].)
Code of Civil Procedure section 1021.5, in pertinent part, provides: "Upon motion, a court may award attorney's fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."
*1770 Both the spirit and letter of the statute compel the conclusion that even where a moving party shows (a), (b) and (c), the trial court still has discretion not to grant a motion for attorney fees. "[T]he Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation." (Woodland Hills Residents Assn., Inc. v. City Council (1979) 23 Cal.3d 917, 939, italics added.)
The facts and the trial court's appraisal of the underlying litigation are fairly stated in the majority opinion. There is no question but that the electorate has a right to accurate ballot information. However, this does not automatically translate to an award of attorney fees for those who litigate the accuracy of a ballot statement.
Here, the electorate received an accurate ballot statement after the trial court made its order. The record shows that the trial court was conversant with both the facts and the law attendant to the requests for fees. (Mandicino v. Maggard (1980) 210 Cal. App.3d 1413 [258 Cal. Rptr. 917] [order granting fees reversed because of the de minimis nature of the change]; King v. Lewis (1990) 219 Cal. App.3d 552 [268 Cal. Rptr. 277] [order denying fees affirmed because of insignificant nature of the changes].)
The trial court's comments could form the basis for a fee award. However, these comments do not compel the holding that it acted in an arbitrary, capricious, or whimsical manner. "We uphold [orders] if they are correct for any reason, `regardless of the correctness of the grounds upon which the court reached its conclusion.' [Citation.] `It is judicial action and not judicial reasoning which is the subject of review....' [Fn. omitted.] [Citation.]" (United Pacific Ins. Co. v. Hanover Ins. Co. (1990) 217 Cal. App.3d 925, 933 [266 Cal. Rptr. 231].)
The order denying attorney fees should be affirmed.
NOTES
[1] All statutory references hereinafter are to the Code of Civil Procedure unless otherwise specified.
[2] Both Measure T and Measure S passed.