Filed 10/17/16  (unmodified opinion attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CITY OF SAN DIEGO,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>SAN DIEGANS FOR OPEN GOVERNMENT,<br><br>        Defendant and Respondent. | D068939, D069890<br><br>(Super. Ct. No. 37-2012-00094831-CU-MC-CTL; 37-2012-00097148-CU-MC-CTL; 37-2012-00100333-CU-TT-CTL)<br><br>ORDER DENYING PETITION FOR REHEARING AND MODIFYING OPINION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

We have read and considered San Diegans for Open Government's (SDOG) petition for rehearing.  We deny the petition.

In its petition, SDOG claims that a rehearing is warranted because our opinion in the instant matter was grounded on two "irrelevant" statutes, Revenue and Taxation Code sections 19719 and 23300 (statutory references are to this code unless otherwise specified).  We disagree.  Our holding in *City of San Diego v. San Diegans for Open Government* (Sept. 22, 2016) 2016 Cal.App.LEXIS 783 was not contingent on a finding that SDOG and/or its attorney, the Briggs Law Corporation (BLC), committed a criminal

act. Instead, we determined that a suspended corporation may not recover attorney fees under Code of Civil Procedure section 1021.5 when the corporation filed an answer in a validation action while both it and its attorney knew it was suspended.

In its petition for rehearing, SDOG, for the first time, directly addresses the City of San Diego's (City) argument that BLC engaged in criminal activity in violation of section 19719. SDOG acknowledges that the City raised this issue in the superior court, but "SDOG stayed on point and did not respond to the inflammatory allegations of criminal misconduct." In other words, SDOG did not feel compelled to provide any defense for its actions or those of its attorney despite being accused of criminal activity.

Further, the allegations of criminal activity did not end with the City's arguments in the superior court. In its notice of ruling and statement of reasons, the superior court explained why it was "greatly concerned" by BLC's actions in representing SDOG in the underlying litigation, specifically referring to BLC's "litigation misconduct" as "at best, an ethical lapse, and, at worst, criminal behavior." And in its opening brief, the City again cited to section 19719 and argued BLC "participated in the litigation knowing they faced the risk of potential and criminal liability[.]" Nevertheless, SDOG did not argue in its respondent's brief that it did not commit any crime. At most, SDOG offered a passing argument that it was not suspended for a failure to pay taxes. It did not discuss section 19719 or otherwise contend that BLC did not violate that statute.

We observe that not only did SDOG and BLC previously fail to argue that their actions were not criminal, they offered no explanation or justification for their actions. They did not do so in the superior court. They did not do so in this court. Now, as part

2

of the petition for rehearing, SDOG insists that it is *entitled* to yet another opportunity "to establish facts to explain its actions." Not so. SDOG was given multiple opportunities to explain its actions. It made the strategic decision not to do so. Merely because SDOG's strategy did not ultimately prove successful does not compel this court to provide SDOG with another bite of the proverbial apple.

In short, it is clear that when SDOG filed an answer in the validation action, both SDOG and its attorney knew SDOG was suspended. It is undisputed that SDOG was not revived until after the time lapsed by which an interested party had to file an answer in the validation action. As such, we determined that SDOG could not recover attorney fees under Code of Civil Procedure section 1201.5. Nothing raised in the petition for rehearing changes this conclusion.

That said, this court reached no conclusion that SDOG or BLC committed a crime. We merely cited to what the superior court stated in its notice of ruling and statement of reasons that BLC's conduct could be criminal (a statement SDOG did not challenge until now). As SDOG insists in its petition for rehearing that neither it nor BLC have engaged in any criminal activity by appearing in the underlying litigation and such a finding is immaterial to our conclusion, in an abundance of caution, we will slightly modify our opinion.

The opinion filed on September 22, 2016 is modified as follows:

On page 11, a footnote is added after the citation to Revenue and Taxation Code section 23301 within the quotation from C*enter for Self-Improvement & Community Development v. Lennar Corp.* (2009) 173 Cal.App.4th 1543, 1552, as follows: Similarly,

a domestic corporation that has failed to file a tax return also may be suspended. (Rev. & Tax. Code, § 23301.5.)

On page 11, second paragraph, the second sentence is modified to read: Additionally, BLC's explicit approval of SDOG's appearance and representation of SDOG was, as described the superior court, unethical ~~and perhaps criminal~~.

On page 12, the first full paragraph, the third sentence is modified to read: In light of this clearly unethical ~~and possibly criminal~~ conduct, we expect some explanation of BLC's actions.

On page 13, first paragraph, the first sentence is modified to read: Further exacerbating BLC's ~~illicit~~ conduct here, BLC does not accept responsibility for its actions.

On page 15, the first full paragraph, the fifth sentence is modified to read: To require taxpayers to compensate a party or a law firm for unethical <u>and</u> unprofessional ~~or even illegal~~ conduct, under the guise that the litigant is protecting the public interest, would turn the private attorney general statute on its head.

THERE IS NO CHANGE IN JUDGMENT.

_____
HUFFMAN, Acting P. J.

Copies to: All parties

4

Filed 9/22/16  (unmodified version)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CITY OF SAN DIEGO, | D068939, D069890 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00094831-CU-MC-CTL; 37-2012-00097148-CU-MC-CTL; 37-2012-00100333-CU-TT-CTL |
| SAN DIEGANS FOR OPEN GOVERNMENT, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Gregory W. Pollack, Judge.  Affirmed in part; reversed in part.

Jan I. Goldsmith, City Attorney, Daniel F. Bamberg, Assistant City Attorney, Catherine Richardson and M. Travis Phelps, Deputy City Attorneys, for Plaintiff and Appellant.

Briggs Law Corporation, Cory J. Briggs, Anthony N. Kim, and Kelly E. Mourning for Defendant and Respondent.

San Diegans For Open Government (SDOG), represented by Briggs Law Corporation (BLC), filed a verified answer in response to the City of San Diego's (City) complaint in a validation action regarding the City's plan to levy a special tax to finance

the expansion of the San Diego Convention Center. By way of its verified answer, SDOG represented that it was an interested party to the litigation. However, at the time it filed its answer, both SDOG and its counsel knew that SDOG was a suspended corporation and neither SDOG nor its attorney informed the superior court or the City of this fact. After SDOG and another defendant ultimately proved successful in the validation action, SDOG sought its attorney fees under Code of Civil Procedure[1] section 1021.5.

The City discovered after a final judgment was entered in SDOG's favor that SDOG had been suspended when it filed its verified answer and was not revived until well after the time period by which an interested party had to answer the validation action. As such, the City moved to strike SDOG's answer and motion for attorney fees. The superior court denied the City's motion and awarded SDOG attorney fees under section 1021.5, but limited those fees because SDOG first appeared when it was suspended and did not inform the court or the City of its status.

Because of some procedural ambiguity, the City filed two separate appeals relating to the denial of its motion to strike and the award of attorney fees to SDOG. We consolidated those appeals here.

This case presents an issue of first impression. Under section 1021.5, should attorney fees be awarded when a suspended corporation files an answer in a validation action and both the corporation and its attorney know it is suspended and it is not revived

---

[1] Statutory references are to the Code of Civil Procedure unless otherwise specified.

before the expiration of the deadline to appear in that action? We answer this question in the negative, and thus, reverse the order granting SDOG its attorney fees. We affirm the court's order denying the City's motion to strike both the answer and SDOG's motion for attorney fees.

FACTUAL AND PROCEDURAL BACKGROUND

On January 24, 2012, the City approved resolution R-307243, which created the Convention Center Facilities District (CCFD). The purpose of the CCFD was to provide the City with the ability to levy a special tax to finance the expansion of the San Diego Convention Center. In May 2012, the City filed a complaint against all interested parties seeking validation of the CCFD and associated special tax plan (Validation Action). Any interested persons who objected to the validity of the City's actions were required to file an answer to the complaint by July 10, 2012. Melvin Shapiro filed an answer to the Validation Action on July 6, 2012.

On July 9, 2012, SDOG filed an answer to the Validation Action. SDOG is a nonprofit corporation. In its answer, SDOG verified under oath that it was an interested party. Several other parties answered the Validation Action or filed reverse validation actions. These other actions were consolidated with the Validation Action.

The Validation Action eventually proceeded to trial in March 2013. The trial court found in favor of the City and entered judgment consistent with that finding. SDOG and Shapiro appealed.

This court reversed the trial court's judgment and remanded the matter to the trial court with directions to enter judgment in favor of SDOG and Shapiro and conduct any

3

further necessary ancillary proceedings consistent with the opinion. (See *City of San Diego v. Shapiro* (2014) 228 Cal.App.4th 756, 793.)

After remand, the superior court entered judgment in favor of Shapiro and SDOG on March 5, 2015. The judgment reserved the issue of attorney fees until the appropriate motion was filed.

Shapiro and SDOG filed a joint motion for attorney fees on December 29, 2014. In that motion, SDOG sought $862,404.92 out of the total requested fees of $2,006,278.02 for both parties. The City opposed the motion. Among other arguments not relevant here, the City asserted that SDOG was not entitled to any fees because it was suspended at the time it filed its answer in the Validation Action.

The City presented evidence that SDOG's attorney, BLC, was aware that SDOG was a suspended corporation no later than May 16, 2012, when a BLC paralegal discovered that fact. Apparently, SDOG had been suspended because it did not pay or file its past due corporate tax returns. Shortly thereafter, the paralegal prepared and submitted various forms to have SDOG reinstated. Some of these forms were purportedly signed by Ian Trowbridge as the chief executive officer of SDOG. Nevertheless, on July 9, 2012, SDOG filed a verified answer in the Validation Action, which Trowbridge verified. There was no mention in the answer that SDOG was a suspended corporation. Further, the City points out that SDOG filed at least five lawsuits while it was a suspended corporation. SDOG was effectively revived on November 20, 2012. The City further emphasizes that SDOG's corporate status was not revived until after its time to answer the Validation Action had expired.

4

The City claimed that it did not become aware of SDOG's suspended status until sometime in October 2014, after our opinion in *City of San Diego v. Shapiro*, *supra*, 228 Cal.App.4th 756 was final. Through discovery in a completely unrelated case, the City learned SDOG was a suspended corporation when it filed the answer in the Validation Action.

In its reply memorandum of points and authorities in support of its motion for attorney fees, SDOG ignored the City's argument about its suspended status. However, in response to the City's subsequently filed motion to strike SDOG's answer and motion for attorney fees, SDOG finally addressed the allegation that it was a suspended corporation at the time it filed an answer in the Validation Action. SDOG did not refute that it was suspended at the time it answered the Validation Action. Nor did it argue that its attorney was not aware it was suspended. Instead of offering any explanation for its actions or those of its attorney, SDOG contended its status was "widely known" as early as 2012. To this end, it emphasized that an article published in the U-T San Diego on August 5, 2012, noted that SDOG was a suspended corporation. SDOG also claimed that as early as August 24, 2012, at least one deputy city attorney was aware of SDOG's suspended status because that deputy city attorney talked to SDOG's counsel at a hearing in the Validation Action and discussed SDOG's suspension. SDOG also points out that, on November 26, 2012, in another action filed by SDOG, the superior court sustained a demurrer the County of San Diego filed to SDOG's complaint based on the fact that SDOG was a suspended corporation at the time it filed the complaint and the statute of limitations had run.

The superior court heard Shapiro and SDOG's motion for attorney fees with the City's motion to strike SDOG's answer and motion for attorney fees. After considering the pleadings, evidence, and hearing oral argument, the court denied the City's motion to strike and granted Shapiro and SDOG's motion for attorney fees. In denying the City's motion to strike, the court found that had the City raised a statute of limitations defense as to SDOG, it probably would have been successful. Nevertheless, the court noted this affirmative defense was only available to the City prior to or at trial. As such, the court found the City could not use the statute of limitations as a mechanism to strike SDOG's answer. Thus, the court denied the City's motion to strike SDOG's answer as untimely.

In addition, the court denied the City's motion to strike SDOG's motion for attorney fees. It found that SDOG prevailed in the Validation Action and that it was entitled to an award of attorney fees. However, even though it denied the City's motion, the court observed:

> "This court is, however, greatly concerned with what occurred here, i.e., a very experienced, capable attorney entered an appearance in litigation on behalf of a corporation which he evidently knew had been suspended and, thus, was a corporation without legal capacity to participate, and thereafter proceeded with the litigation without advising either the court or opposing counsel. By doing this, SDOG escaped what would have been certain death via the statute of limitations and, instead, ultimately entitled itself to a large award of attorney's fees as a prevailing party. Moreover, the evidence before this court indicates that the Briggs law firm filed five other lawsuits on behalf of SDOG during this same period of corporate suspension (in addition to continuing to maintain other SDOG lawsuits which had been filed prior to SDOG's becoming suspended). Such litigation misconduct constitutes, at best, an ethical lapse, and at worst, criminal behavior."

6

The court further stated that it could not "condone what occurred here" and exercised its discretion to award SDOG no fees for work done during the period of time it was suspended. In addition, it did not award SDOG any fees incurred in opposing the City's motion to strike. Yet, the court still found SDOG was entitled to attorney fees and ordered the parties to meet and confer "to create a proposed fee schedule order based upon the hourly rates and subtractions set forth in this ruling for the Court's signature and approval."

Apparently, the parties where somewhat unclear regarding the court's ruling on SDOG's motion for attorney fees, and thus, they returned to court twice for clarification. The court produced an "Amendment to Notice of Ruling and Statement of Reasons" wherein the court addressed the issue of SDOG's attorney fees incurred prior to when it was suspended. The court set forth that SDOG was to be compensated for 50 percent of its attorney fees that were incurred prior to suspension. The court again directed the parties to "meet and confer to prepare a final order for the court, reflecting the arithmetic figures resulting from the original ruling and this amendment thereto."

As ordered, counsel for the City and SDOG met and conferred but were unable to agree on the arithmetic. SDOG's counsel prepared, filed, and served a document titled "Notice of Entry of Orders/Rulings on Fee Motion," which attached, as exhibits, the court's notice of ruling and statement of reasons and its amendment to notice of ruling and statement of reasons. Following that notice, the City appealed.

Because the notice of ruling and the amendment to notice of ruling ordered the parties to meet and confer regarding the final arithmetic calculation of the attorney fee

7

award and did not contain the calculation of the attorney fees awarded, in an abundance of caution, the City filed an ex parte application to obtain a signed order from the trial court. SDOG opposed the application due to the pending appeal. The trial court noted the objection, granted the application, and signed the order on February 24, 2016. That order sets forth that SDOG is awarded $258,629.89 in attorney fees.

The City timely appealed that order, and subsequently moved to consolidate its appeal with its previous appeal. We granted the motion.

DISCUSSION

Here, the City does not challenge the amount of attorney fees awarded to SDOG, but instead, argues SDOG was not entitled to any fees whatsoever under section 1021.5. We view the City's contention as raising only a legal question that we review independently. (See *Moraga-Orinda Fire Protection Dist. v. Weir* (2004) 115 Cal.App.4th 477, 480.)

Section 1021.5 codifies the private attorney general doctrine. (*Punsly v. Ho* (2003) 105 Cal.App.4th 102, 109.) An award of attorney fees is appropriate, under section 1021.5, when a litigant has been a successful party " 'in any action which has resulted in the enforcement of an important right affecting the public interest.' " (*Savaglio v. Wal-Mart Stores, Inc.* (2007) 149 Cal.App.4th 588, 601-602.) "Three basic criteria are required to support an award of attorneys' fees under section 1021.5: (1) the action resulted in the enforcement of an important right affecting the public interest; (2) a significant benefit was conferred on the general public or a large class of persons; and (3) the necessity and financial burden of private enforcement were such as to make the award

8

appropriate."  (*Abouab v. City and County of San Francisco* (2006) 141 Cal.App.4th 643, 663 (*Abouab*).)

The private attorney general doctrine "is designed to encourage private enforcement of important public rights and to ensure aggrieved citizens have access to the judicial process where statutory or constitutional rights have been violated."  (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 690; see *Hull v. Rossi* (1993) 13 Cal.App.4th 1763, 1767 ["The fundamental objective of the private attorney general theory is to encourage suits effecting a strong public policy by awarding substantial attorney fees to those whose successful efforts obtain benefits for a broad class of citizens."].)  "The private attorney general doctrine is based on the theory that 'privately initiated lawsuits are often essential to the effectuation of the fundamental public polices embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible.' "  (*Abouab, supra*, 141 Cal.App.4th at p. 663.)  Therefore, section 1021.5 clearly operates as a financial incentive for attorneys to protect the public against certain government encroachment or missteps. However, it should not be such a tantalizing carrot that it causes an attorney to behave unethically and unprofessionally or otherwise forget his or her role as an officer of the court.  In the instant matter, this is precisely what occurred as to BLC's representation of SDOG.

On May 10, 2012, the City filed a validation action regarding the CCFD special tax.  " '[I]n its most common and practical application, the validating proceeding is used

9

to secure a judicial determination that proceedings by a local government entity, such as the issuance of municipal bonds and the resolution or ordinance authorizing the bonds, are valid, legal, and binding.' " (*Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 842.) Section 861.1 requires that the summons in any validation action be directed to all persons interested in the matter. The City complied with section 861.1 and named "all persons interested in this matter." The City did not specifically name SDOG as a defendant.

"Any interested party may, not later than the date specified in the summons, appear and contest the legality or validity of the matter sought to be determined." (§ 862.) Here, the summons indicated that any interested party must respond by July 10, 2012. Shapiro filed an answer in the Validation Action on or about July 6, 2012. In his answer, Shapiro represented to the court that he was an "interested person" as he was a "citizen, resident, voter, and taxpayer located within the City and within the boundaries of the [CCFD]."

On July 9, 2012, SDOG filed an answer verified by Trowbridge as an officer of SDOG. An attorney from BLC, representing SDOG, also signed the verified answer. By way of the answer, SDOG admitted it was an interested party in the Validation Action. In addition, it requested attorney fees as authorized under the Code of Civil Procedure and the Government Code.

It is undisputed that SDOG was a suspended corporation at the time it appeared in the Validation Action. Indeed, the same individual who verified the complaint (Trowbridge) signed some of the forms submitted to revive SDOG. Further, it is

10

undisputed that BLC was aware that SDOG was suspended at the time one of its attorneys signed and filed the answer. There is no indication in the record that BLC ever informed the court or the City of SDOG's suspended status. And SDOG's corporate status was not revived until November 20, 2012, more than four months after the expiration of the deadline to appear in the Validation Action.

The law is clear that SDOG lacked the capacity to appear in the Validation Action. A corporation that has had its powers suspended "lacks the legal capacity to prosecute or defend a civil action during its suspension." (*Sade Shoe Co. v. Oschin & Snyder* (1990) 217 Cal.App.3d 1509, 1512 (*Sade*).) "The 'corporate powers, rights and privileges' of any domestic corporate taxpayer may be suspended for failure to pay certain taxes and penalties. (Rev. & Tax. Code, § 23301.) This means the suspended corporation cannot sell, transfer or exchange real property in California, and contracts entered into during the time of suspension are voidable . . . through legal action. [Citation.] . . . Nor, during the period of suspension, may the corporation prosecute or defend an action, seek a writ of mandate, appeal from an adverse judgment, or renew a judgment obtained before suspension." (C*enter for Self-Improvement & Community Development v. Lennar Corp.* (2009) 173 Cal.App.4th 1543, 1552 (*Center for Self-Improvement*).)

Despite this clear authority, SDOG, represented by BLC, filed an answer in the Validation Action. Such conduct was clearly wrong. Additionally, BLC's explicit approval of SDOG's appearance and representation of SDOG was, as described by the superior court, unethical and perhaps criminal. (See *Palm Valley Homeowners Assn., Inc. v. Design MTC* (2000) 85 Cal.App.4th 553, 562 ["The firm urges that it could not

11

discharge its ethical duties to represent its client, if it had to reveal the client's suspended status to the court and counsel. Not so. If the corporation had been suspended for nonpayment of taxes, the client's disability would have been clear, and the attorney's duty to report that to the court would also have been clear."]; Rev. & Tax. Code, § 19719, subd. (a) [crime punishable by a fine up to $1,000 and one year imprisonment for "[a]ny person who attempts or purports to exercise the powers, rights, and privileges of a corporation that has been suspended pursuant to Section 23301 . . . ."].) Moreover, the record indicates that not only did SDOG appear in the Validation Action, but it filed five other actions as a plaintiff while suspended. Neither SDOG nor BLC dispute that they made these additional filings.

We are perplexed by BLC's and SDOG's actions here. We do not understand why BLC would represent SDOG in the Validation Action and file a verified answer on behalf of SDOG when it knew, as did the corporation, that SDOG was suspended. In light of this clearly unethical and possibly criminal conduct, we expect some explanation of BLC's actions. BLC provides none. BLC does not explain why it felt compelled to violate the law and make an appearance on behalf of SDOG. BLC does not discuss any exigency in the matter that induced its improper actions. BLC does not clarify what value SDOG's presence in the action added, especially considering that the public interest was already being protected by Shapiro. There is no indication that SDOG obtained unique relief that Shapiro did not or could not achieve in the Validation Action. In other words, BLC offers absolutely no justification for its actions.

12

Further exacerbating BLC's illicit conduct here, BLC does not accept responsibility for its actions. Instead, it blames the City for failing to discover earlier that SDOG was a suspended corporation. To this end, it points out that an article in the local newspaper referred to SDOG as a suspended corporation. In a separate case, a defendant successfully demurred to SDOG's complaint on the grounds it was a suspended corporation; and a BLC attorney discussed SDOG's suspended status with a deputy city attorney while waiting for the court to call the Validation Action for a hearing. We agree with the superior court that BLC's argument on this point is not of the moment. In blaming the City for not being more diligent, BLC is merely trying to deflect attention from its unethical conduct. Such blame shifting and obfuscation does not carry the day.

BLC points out that its corporate status was revived, and the effect of such revival, validated otherwise invalid prior proceedings. (See *Benton v. County of Napa* (1991) 226 Cal.App.3d 1485, 1490.) However, courts have distinguished "between procedural steps taken on behalf of the suspended corporation while under supervision, which can be resuscitated by revival, and substantive defenses that accrue during the time of suspension, which cannot." (*Center for Self-Improvement, supra,* 173 Cal.App.4th at p. 1554.) The statute of limitations is regarded as a substantive defense. If an action is commenced while the corporation is suspended, the corporation's subsequent revival does not prevent the running of the statute of limitations; the statute runs prior to revival, the corporation's actions will be time-barred, even if the complaint would have otherwise been timely. (*Ibid*.; *Sade, supra,* 217 Cal.App.3d at p. 1513.) In a validation action, any interested party has a statutory deadline by which he or she must appear to contest the

government's action. (§ 862.) If the interested party does not appear during the prescribed time, he or she loses the opportunity to challenge the government's action. (*Ibid.*) Here, any interested party was required by statute to respond to the complaint in the Validation Action by July 10, 2012. SDOG filed its answer on July 9, 2012, but it was suspended at that time and was not revived until more than four months later. We view the time limit established by section 862 like a statute of limitations. Put differently, if any interested party appears in a validation action after the time period permitted by the applicable summons, the government would have a valid defense, preventing that interested party from further challenging the government's proposed action. Thus, the fact that SDOG was revived four months after the time expired by which it had to appear in the Validation Action does not excuse BLC's furtive conduct of filing SDOG's answer while it knew its client was a suspended corporation.

Finally, we disagree with SDOG that the City waived any lack of capacity defense as to SDOG's motion for attorney fees. In opposition to SDOG's motion for attorney fees under section 1021.5, the City raised the argument that SDOG was suspended at the time it first appeared in the Validation Action. This was the earliest the City could raise such a challenge to SDOG's claimed entitlement to attorney fees because SDOG had not previously moved for fees. Moreover, the City filed a motion to strike SDOG's motion for attorney fees shortly thereafter. There was no waiver.

In summary, we conclude as a matter of law, under the unique facts of this case, attorney fees under section 1021.5 are not available for SDOG. SDOG was a suspended corporation at the time it appeared in the Validation Action and its corporate status was

14

not revived until well after the period to appear in the Validation Action had expired. SDOG and its attorney, BLC, were aware SDOG was suspended at the time the answer was filed. BLC did not inform the superior court or the City of SDOG's suspended status. It did not seek a continuance so SDOG could be revived and, once revived, file an answer. BLC offers no explanation for its improper conduct. Nor does its explain what additional benefit it provided in this matter in light of the fact that Shapiro had already appeared and was protecting the public interest. Put differently, BLC does not elucidate why it was imperative that it knowingly represent a suspended corporation in this matter. We can draw no other conclusion but that BLC proceeded in bad faith in the instant action.

Here, SDOG was only eligible to recover its attorney fees under section 1021.5 if it appeared in the Validation Action by the prescribed deadline. It is undisputed that it could not legally do so in the instant action. The private attorney general doctrine is intended to encourage litigants to protect the public interest by providing a financial incentive to do so. (See *Bell v. Vista Unified School Dist.*, *supra*, 82 Cal.App.4th at p. 690; *Hull v. Rossi*, *supra*, 13 Cal.App.4th at p. 1767; *Abouab, supra*, 141 Cal.App.4th at p. 663.) That said, we determine that attorney fees cannot be awarded to a party whose attorney violates the law to appear in the action and offers no justification whatsoever for his or her conduct. To require taxpayers to compensate a party or a law firm for unethical, unprofessional, or even illegal conduct, under the guise that the litigant is protecting the public interest, would turn the private attorney general statute on its head. We cannot countenance such a result.

15

Having concluded that SDOG is not entitled to attorney fees under section 1021.5, we briefly address the City's challenge to the superior court's order denying its motion to strike SDOG's answer and motion for attorney fees. We view the City's motion to strike as an alternative challenge to the award of attorney fees to SDOG. As such, we do not reach this issue. Because we determine SDOG is not entitled to attorney fees, the City's motion to strike SDOG's motion for attorney fees is moot. Likewise, if successful, the City's motion to strike the answer would merely result in striking SDOG's name from the judgment in the Validation Action, and thus, deprive SDOG of any claim to attorney fees as a prevailing party. It would not reverse the judgment in the Validation Action because Shapiro remains a valid defendant and prevailing party. Therefore, we conclude City's motion to strike SDOG's answer is moot and do not address that issue as well.

## DISPOSITION

The order granting SDOG attorney fees under section 1021.5 is reversed. The order denying the City's motion to strike is affirmed. The City is awarded its costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:

NARES, J.

HALLER, J.

16