[Civ. No. 52081. Second Dist., Div. Five. Aug. 21, 1978.]

CESAR E. CHAVEZ et al., Plaintiffs and Appellants, v.
CITIZENS FOR A FAIR FARM LABOR LAW et al.,
Defendants and Respondents.

78

COUNSEL

Jerome Cohen, Sanford N. Nathan and George C. Lazar for Plaintiffs and Appellants.

Gibson, Dunn & Crutcher, Theodore B. Olson, H. Frederick Tepker, Hanna & Morton, James Paul Lower, James S. Bright and Dean W. Drulias for Defendants and Respondents.

OPINION

HASTINGS, J.—Plaintiffs filed an action seeking actual and punitive damages for fraudulent misrepresentation in the course of the campaign election concerning Proposition 14, the Agricultural Labor Relations Initiative statute. Defendants[1] demurred and the court sustained all demurrers without leave to amend. ■ On this appeal, plaintiffs contend that their *complaint* states a cause of action, either on intentional misrepresentation, or pursuant to Civil Code section 3369.[2]

In the 1976 general election, plaintiffs campaigned in favor of Proposition 14,[3] while defendants were against it. Both parties aggressively promoted and financed campaign programs in support of their respective positions. The complaint alleged that defendants represented to the electorate that Proposition 14 would entail "a deprivation of property rights and 'personal property rights' of agricultural employers and of persons having no interest in or relationship to agriculture;" that

[1]The demurring defendants were Citizens for a Fair Farm Labor Law, a California nonprofit corporation erroneously sued as No on 14 Committee; Dolphin Investment, Inc., a California corporation erroneously sued as Dolphin Public Relations—a division of Dolphin Investment, Inc.; Superior Farming Company; The Superior Oil Co.; Pan-American Underwriters, Inc.; and Bill Roberts.

[2]Civil Code section 3369 reads in pertinent part as follows: "2. Any person performing or proposing to perform an act of unfair competition within this state may be enjoined in any court of competent jurisdiction. [¶] 3. As used in this section, unfair competition shall mean and include unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising and any act denounced by Business and Professions Code Sections 17500 to 17535, inclusive."

Plaintiffs claim this section was violated by defendants' intentional false statements of fact. This is answered by our opinion. Furthermore, this section applies to unlawful business practices and not public election campaigning.

[3]Proposition 14 was a proposed initiative statute intended to amend and reenact certain legislation regarding the organization and collective bargaining rights and procedures of farm workers. One of its provisions created a statutory right of access to farms for union organizers.

these statements were false and misleading, and were designed to and did influence the electorate. Plaintiffs sought as damages moneys spent to combat the alleged misrepresentations.

There are only a few published cases where a plaintiff seeks damages for fraudulent misrepresentation in a political campaign. Generally, the cause of action is for injunctive relief or damages for libel or slander. ■ ■■■■ One probable reason for the paucity of fraud cases is the requirement on the part of the plaintiff of reliance on a misrepresented material fact.[4] In *Gold* v. *Los Angeles Democratic League,* 49 Cal.App.3d 365 [122 Cal.Rptr. 732], California has a case directly in point. Plaintiff, a political candidate, alleged that defendants disseminated false and misleading information to prospective voters which implied that certain candidates were endorsed by the Democratic Party when in fact they were not. In upholding the trial court's ruling sustaining a demurrer, the court held that since the plaintiff knew that the candidates were not endorsed by the Democratic Party, he obviously could not "justifiably have relied on the alleged misrepresentation." (*Id.,* at p. 375.)

■ Inasmuch as plaintiffs, by their own pleading,[5] have admitted that they knew at all times that the statements were false, *Gold, supra,* is controlling. We believe, however, that there are more compelling reasons for affirming the dismissal. Recent heated and emotional campaigns conducted on several initiatives (Prop. 13 being the most notable) illustrate the problem and justify a further examination of the applicable law involved.

The basic issue in this case is whether we are dealing with a statement of fact or an opinion. The reason is succinctly stated in *Gregory* v. *McDonnell Douglas Corp.,* 17 Cal.3d 596, at pp. 600-601 [131 Cal.Rptr. 641, 552 P.2d 425]: " '. . . Before the test of reckless or knowing falsity can be met, there must be a false statement of fact.' (*Letter Carriers* v.

---

[4] In order to state a cause of action for fraud, a plaintiff must allege (1) a false representation of a material fact, (2) made recklessly or without reasonable ground for believing its truth, (3) with intent to induce reliance thereon, (4) on which the plaintiff justifiably relies, (5) to his injury. (*Gonsalves* v. *Hodgson,* 38 Cal.2d 91, 100-101 [237 P.2d 656].)

[5] Plaintiffs sought damages for moneys expended to counteract the alleged false statement. Clearly, the reliance requirement for a fraud action is missing. Plaintiffs tried to satisfy the reliance requirement by stating that members of the electorate relied on the representations. This is a conclusion of law based on speculation. None of the plaintiffs alleged they were misled and thereby suffered damages.

*Austin, supra,* 418 U.S. 264, at pp. 283-284 [41 L.Ed.2d 745, at p. 761], citation omitted.) This requirement, which is by no means limited to the labor dispute context, is constitutionally based. The reason for the rule, well stated by the high court, is that 'Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and, juries but on the competition of other ideas.' [Citations.] In this context courts apply the Constitution by carefully distinguishing between statements of opinion and fact, treating the one as constitutionally protected and imposing on the other civil liability for its abuse.

"The critical determination of whether the allegedly defamatory statement constitutes fact or opinion is a question of law. [Citations.] The distinction frequently is a difficult one, and what constitutes a statement of fact in one context may be treated as a statement of opinion in another . . . ." The trial court, when considering the demurrer, was required to determine if the statement attributed to defendants was fact or opinion. By sustaining the demurrer, the court chose the latter. We conclude it was correct.

When it is difficult to determine whether a statement is fact or opinion, federal and California cases have supplied the standards for making this decision where the statements are made in public debate touching on issues before the voters. A principal federal case is *New York Times Co.* v. *Sullivan,* 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412], where Mr. Justice Brennan, writing for the majority, states (pp. 269-272 [11 L.Ed.2d pp. 700-701]): "The general proposition that freedom of expression upon public questions is secured by the First Amendment has long been settled by our decisions. The constitutional safeguard, we have said, 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' *Roth* v. *United States,* 354 U.S. 476, 484. . . . '[I]t is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions,' *Bridges* v. *California,* 314 U.S. 252, 270, and this opportunity is to be afforded for 'vigorous advocacy' no less than 'abstract discussion.' *N.A.A.C.P.* v. *Button,* 371 U.S. 415, 429. . . . Thus we consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on govern-

ment and public officials. [Citations.] . . . [E]rroneous statement is inevitable in free debate, and that it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need . . . to survive,' *N.A.A.C.P.* v. *Button,* 371 U.S. 415, 433, . . ."

Earlier in this opinion, we quoted portions of Justice Richardson's opinion in *Gregory* v. *McDonnell Douglas Corp., supra,* 17 Cal.3d 596. Another statement is directly in point on page 601, namely, "Thus, where potentially defamatory statements are published in a public debate, a heated labor dispute, or in another setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion."

The decisional law cited clearly guides the trial court and this court on the issue in question. ■ The Constitution, and public policy, require open public debate on initiative issues without the "chilling" effect of legal reprisals. Statements made in this context generally are, and should be, treated as opinions. This is particularly true when they concern an initiative measure. Almost all, if not all, statements concerning the *effect* or *application* of an initiative can only be the opinion of the interpreter, and the voting public is generally aware of this. ■ The representations in our present case are a good example. The "access" issue before the voters was not new. The courts have grappled with the problem many times. The right of access in one form was upheld in *Food Employees* v. *Logan Plaza* (1968) 391 U.S. 308 [20 L.Ed.2d 603, 88 S.Ct. 1601], only to be changed later in *Lloyd Corp.* v. *Tanner* (1972) 407 U.S. 551 [33 L.Ed.2d 131, 92 S.Ct. 2219] and *Hudgens* v. *NLRB,* (1976) 424 U.S. 507 [47 L.Ed.2d 196, 96 S.Ct. 1029]. In *Agricultural Labor Relations Bd.* v. *Superior Court,* 16 Cal.3d 392 [128 Cal.Rptr. 183, 546 P.2d 687], our California Supreme Court, by a four to three decision, approved an administrative order that permitted qualified access to privately owned agricultural property by labor organizers.[6] The decisional law has not been consistent on the issue. Proposition 14 sought to put an access rule into statutory form. Its scope and effect were open to several interpreta-

---

[6]Plaintiffs maintain that this decision proves the "fact" that the access provisions of Proposition 14 did not constitute a deprivation of property rights. This opinion, however, was not considering the effect or constitutionality of the access provisions of Proposition 14. The closely divided court could reach a different result on the Proposition 14 issue.

tions, none of which could qualify as fact until one or more high court decisions on the issue.

The judgment sustaining the demurrer is affirmed.

Kaus, P. J., and Ashby, J., concurred.