Opinion
 

 HALVONIK, J.
 

 Appellant is the owner of a large parcel of land approved by the Contra Costa County Board of Supervisors for a planned community development. The project includes 4,800 acres of land, 2,000
 
 *642
 
 of which are to be dedicated for inclusion in Mt. Diablo State Park. Four thousand two hundred homes are planned for the remainder, with associated recreational and commercial facilities.
 

 No referendum of rezoning was sought but when the board of supervisors approved a special district reorganization, respondents and others opposed to the project launched a referendum drive. They asked voters to sign a petition that would have required the board of supervisors either to repeal their approval of the reorganization or submit the question to the voters.
 

 The board of supervisors rejected the petition and a group calling itself Friends of Mt. Diablo sought a writ of mandate requiring the board to act on the petition. The trial court denied the writ and, on appeal, this court sustained that ruling holding that under the District Reorganization Act (Gov. Code, § 56000 et seq.) the board’s decision was not subject to referendum.
 
 (Friends of Mount Diablo
 
 v.
 
 County of Contra Costa
 
 (1977) 72 Cal.App.3d 1006 [139 Cal.Rptr. 469].)
 

 In the course of circulating the referendum petitions, respondents made statements which, appellant alleges, were false and maliciously so. Respondents said the project would be a “high density” urban development and would require millions of dollars in public subsidies when, according to appellant a low density development was planned which would require no public subsidies. Respondents said the project would be on Mt. Diablo and that the 4,800 acres could be included in the state park when, according to appellant, the project would not actually be on Mt. Diablo and only 2,000 acres of appellant’s land are within the “zone of interest” for the ultimate expansion of the park. Respondents are also accused of misleading the voters when they said that the proposed development would scar Mt. Diablo, that views from Mt. Diablo would be harmed and that the project could be successfully thwarted by means of referendum.
 

 The court below sustained a general demurrer to appellant’s complaint. The demurrer was properly sustained because respondents’ statements were not, in context, defamatory. They did not impugn appellant’s honesty or accuse appellant of a crime. They were addressed to the electorate and they concerned a matter of intense public interest. Appellant’s complaint is not really that it has been defamed but that its project has been misrepresented. But the truth
 
 vel non
 
 of respondents’ charges was for the electorate to assess, not the judicial arm of the
 
 *643
 
 government. “Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.”
 
 (Gertz
 
 v.
 
 Robert Welch, Inc.
 
 (1974) 418 U.S. 323, 339-340 [41 L.Ed.2d 789, 805, 94 S.Ct. 2997].)
 
 *
 

 That principle has recently been reaffirmed in
 
 Gregory
 
 v.
 
 McDonnell Douglas Corp.
 
 (1976) 17 Cal.3d 596 [131 Cal.Rptr. 641, 552 P.2d 425] and
 
 Chavez
 
 v.
 
 Citizens for a Fair Farm Labor Law
 
 (1978) 84 Cal.App.3d 77 [148 Cal.Rptr. 278]. In
 
 Gregory
 
 the president and vice president of a labor union brought a libel action against a manufacturing corporation which had accused them of acting in a manner detrimental to the union membership in order to promote their own political ambitions. The court held that the manufacturer’s allegations were not actionable. A distinction must be drawn, the court said, between statements of opinion and statements of fact. Whether a statement is one of fact or opinion is, in the first instance, one of law. (17 Cal.3d at p. 601.) When making that legal judgment, a court must look to the context of the statements. Statements occurring in the course of a public debate will usually be accorded the status of an opinion. “Thus, where potentially defamatory statements are published in a public debate, a heated labor dispute, or in another setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion.” The
 
 *644
 
 statements in
 
 Gregory
 
 went much further than those appellant complains of here. They impunged the character of the plaintiffs. But the court held that that, by itself, would not convert the statements from opinion to fact. “Publications otherwise protected under the First Amendment do not lose their protection because they contain statements which attribute improper motives to a public officer or to an active participant in a labor dispute. The legal effect of attacks on motives must be carefully distinguished, however, from accusations that an individual has committed a crime or is personally dishonest. No First Amendment protection, of course, enfolds the latter charges.”
 
 (Id.,
 
 at p. 604; and see
 
 Good Government Group of Seal Beach, Inc.
 
 v.
 
 Superior Court
 
 (1978) 22 Cal.3d 672 [150 Cal.Rptr. 258, 586 P.2d 572].)
 

 In
 
 Chavez
 
 a labor leader brought an action for fraudulent misrepresentation against organizations which had opposed an agricultural labor relations initiative that he had supported. Chavez contended that his opponents had misled the electorate by falsely stating that the proposition, if enacted, would abrogate certain property rights of people having no interest in or relationship to agriculture. The court held that no cause of action had been stated. “The Constitution, and public policy, require open public debate on initiative issues without the ‘chilling’ effect of legal reprisals. Statements made in this context generally are, and should be, treated as opinions. This is particularly true when they concern an initiative measure. Almost all, if not all, statements concerning the
 
 effect
 
 or
 
 application
 
 of an initiative can only be the opinion of the interpreter, and the voting public is generally aware of this.”
 
 (Chavez
 
 v.
 
 Citizens for a Fair Farm Labor Law, supra,
 
 84 Cal.App.3d at p. 82 emphasis in original; and see
 
 Sierra Club
 
 v.
 
 Butz
 
 (N.D.Cal. 1972) 349 F.Supp. 934.).
 

 Respondents expressed their opinions about the effects of a proposed housing development on their community. It was for their fellow citizens, not the courts, to judge the merits of those opinions.
 

 The judgment sustaining the demurrer is affirmed.
 

 White, P. J., and Scott, J., concurred.
 

 A petition for a rehearing was denied July 27, 1979, and appellant’s petition for a hearing by the Supreme Court was denied August 22, 1979.
 

 *
 

 “To reach sound conclusions on these matters, we must bear in mind why a State is, ordinarily, denied the power to prohibit dissemination of social, economic and political doctrine which a vast majority of its citizens believes to be false and fraught with evil consequence. [11] Those who won our independence believed that the final end of the State was to make men free to develop their faculties; and that in its government the deliberative forces should prevail over the arbitrary. They valued liberty to be the secret of happiness and courage to be the secret of liberty. They believed that freedom to think as you will and to speak as you think are means indispensable to the discovery and spread of political truth; that without free speech and assembly discussion would be futile; that with them, discussion affords ordinarily adequate protection against the dissemination of noxious doctrine; that the greatest menace to freedom is an inert people; that public discussion is a political duty; and that this should be a fundamental principle of the American government. They recognized the risks to which all human institutions are subject. But they knew that order cannot be secured merely through fear of punishment for its infraction; that it is hazardous to discourage thought, hope and imagination; that fear breeds repression; that repression breeds hate; that hate menaces stable government; that the path of safety lies in the opportunity to discuss freely supposed grievances and proposed remedies; and that the fitting remedy for evil counsels is good ones.”
 
 (Whitney
 
 v.
 
 California
 
 (1927) 274 U.S. 357, 374-375 [71 L.Ed. 1095, 1105-1106, 47 S.Ct. 641]. Conc, opn. of Brandeis and Holmes, JJ.) (Fn. omitted.) (And see, generally, Meiklejohn, Free Speech and its Relation to Self-Government (1948).)