Filed 2/14/24

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| SAN BERNARDINO COUNTY FIRE PROTECTION DISTRICT,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>BOB PAGE, as County Registrar, etc.,<br><br>　　　Defendant;<br><br>ROBERT CABLE et al.,<br><br>　　　Real Parties in Interest and Appellants. | E079130<br><br>(Super. Ct. No. CIVSB2201601)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County. David S. Cohn, Judge. Affirmed and Dismissed.

The Sutton Law Firm and Bradley W. Hertz; Sanders Political Law and Nicholas L. Sanders, for Plaintiff and Appellant.

Jolena E. Grider, Deputy County Counsel, for Defendant.

Michel & Associates, C.D. Michel, Joseph Di Monda, and Alexander A. Frank, for Real Parties in Interest and Appellants.

1

I.

INTRODUCTION

Real parties in interest and appellants (Real Parties)[1] circulated an initiative

petition seeking to repeal a special tax imposed in Service Zone Five (FP-5) of the San

Bernardino County Fire Protection District (District). In an attempt to prevent the

initiative (Initiative) from appearing on the June 2022 ballot, the District filed in the trial

court a writ petition and complaint for injunctive and declaratory relief (Writ Petition),

alleging that Real Parties' Initiative included material, false and misleading information

in violation of Elections Code section 18600.[2] The trial court ruled that Real Parties'

Initiative was invalid because it contained false and misleading statements, and granted

the District's Writ Petition. But because it was too late to prevent the Initiative from

appearing on the ballot, the electorate voted on the Initiative and it passed.

Real Parties appeal the trial court order granting the District's Writ Petition. They

contend that the trial court erred in finding that the Initiative contained false and

misleading statements in violation of section 18600. Real Parties also contend that the

trial court erred in ruling that the District was not required to prove intent because section

18600's intent requirement is inapplicable. In the District's cross-appeal, the District

---

[1] Real Parties are Robert Cable, Charles Pruitt, David Jarvi, Ruth Musser-Lopez, and Albert Vogler.

[2] Unless otherwise noted, all statutory references are to the Elections Code.

2

argues that the full-text doctrine provided an additional ground for the trial court to rule that the Initiative is invalid.

We conclude the trial court properly found the Initiative invalid and appropriately granted the District's Writ Petition based on the Initiative containing false and misleading information. We further conclude the District was not required to establish intent under section 18600 and affirm the order granting the Writ Petition. Because we conclude the trial court properly disqualified the Initiative as invalid, the District's cross-appeal, raising an additional ground for disqualifying the Initiative, is dismissed as moot.

II.

FACTUAL AND PROCEDURAL BACKGROUND

In 2006, the San Bernardino County Board of Supervisors approved the creation of County Service Area 70, FP-5, which included the Helendale/Silver Lakes area of San Bernardino County (County). Initially, FP-5 was a small jurisdiction with 1,022 residents who voted in 2006 in favor of imposition of a $117 special tax per parcel to fund fire and emergency services in FP-5. The special tax included an annual inflationary increase of up to 3 percent.

In 2008, the County formed the District under the Fire Protection Act (Health & Saf. Code, § 13803, subd. (a)), and annexed FP-5 and its special tax into the District. The District includes 10 separate fire protection service zones, including FP-5.

3

A. *Expansion of FP-5 by Annexation*

The services provided by the District are primarily funded through property taxes, contract revenue, and assessment revenue. The District also receives funding from the County. In 2018, the District was operating under a $29 million shortfall. The District therefore proposed at a County Board of Supervisors meeting to increase tax revenue by expanding FP-5 to include Grand Terrace, Yucca Valley, and all unincorporated areas not already receiving fire and emergency medical services from the District, except for unincorporated areas within Montclair's sphere of influence. Otherwise, the District would have had to impose severe cuts to fire services or continue subsidizing fire services in those communities with funds collected from property owners in other areas of the County.

At the June 12, 2018, Board of Supervisors meeting, the Board of Supervisors adopted a resolution for a new annual parcel tax on all unincorporated parcels and some incorporated parcels in the District. The Board of Supervisors also adopted a resolution providing protest procedures allowing affected landowners to protest the implementation of the new special tax and expansion of FP-5. After a public hearing in October 2018, in which the public was permitted to protest the expansion of FP-5, the Board of Supervisors, sitting as the Board of Directors of the District, passed a resolution approving the expansion of FP-5 and imposition of the new special tax. In 2018, the landowners in FP-5 were assessed an annual fee set at $157.26 per year, which could increase up to 3 percent per year.

B. *Demurrer Ruling in* The Red Brennan Group *Lawsuit*

In response to the resolution, in October 2018, The Red Brennan Group and other plaintiffs filed in the San Bernardino County Superior Court a reverse validation lawsuit (Code Civ. Proc., §§ 860, 863) against the County, the District, and other defendants, contesting the validity of the District's approval of expansion of FP-5 in October 2018, and imposing the special tax without a two-thirds vote by the electorate (*The Red Brennan Group*, *et al. v. The Board of Supervisors of San Bernardino County*, *et al.*, Case No. CIVDS-1826559 (*The Red Brennan Group* lawsuit)). The lawsuit included causes of action for (1) permanent injunction, (2) declaratory relief as to the approved special tax, and (3) declaratory relief as to the necessity of an Environmental Impact Report.

In January 2019, the defendants in *The Red Brennan Group* lawsuit filed a demurrer to the first amended complaint, and in April 2019, the trial court sustained the demurrer without leave to amend on the ground the action was time-barred for failure to timely bring it within 60 days after the District approved the expansion of FP-5 on October 16, 2018.

The trial court further stated in its detailed, 18-page decision that, "substantively, although Plaintiffs title this a claim contesting the unconstitutional imposition of the special tax, the underlying premise is that the special tax should not be imposed on the citizens in the annexed part of the fire protection zone simply because the tax was already assessed in the original zone. . . . However, under Government Code section 57330, . . . 'any territory annexed to a city or district shall be subject to the levying or fixing and

5

collection of any previously authorized taxes, benefit assessments, fees, or charges of the city or district.' (Gov. [Code], § 57330.) As a result, Plaintiffs' claim regarding the improper imposition of the special tax actually arises out of the annexation action taken by District – i.e., but for the annexation and the expansion of Service Zone FP-5, the special tax would not be assessed on the annexed parcels."

The trial court in *The Red Brennan Group* lawsuit also rejected the plaintiffs' constitutional challenge to the special tax as unfounded under *Citizens Association of Sunset Beach v. Orange County Local Agency Formation Commission* (2012) 209 Cal.App.4th 1182, 1194-1195 (*Sunset Beach*), finding that "the *Sunset Beach* court concluded Proposition 218's proponents 'simply never intended it to apply to annexations.' (*Id.* at 1195.)"

In June 2020, the District Board passed and adopted Resolution No. 2020-95, which set the FP-5 special tax at $157.26 per parcel for the fiscal year 2020-2021.

C. *The Initiative*

In May 2021, Real Parties submitted the Initiative text to the County registrar (Registrar) and a "Notice of Intent to Circulate Petition." Between June and October 2021, Real Parties circulated the Initiative petition among the District's voters. In October 2021, Real Parties submitted the signed Initiative Petition to the Registrar, and in December 2021, the Registrar certified that the number of signatures on the Initiative Petition was sufficient to qualify the Initiative for the June 7, 2022 ballot. In January 2022, the District Board voted to place the Initiative on the ballot.

6

The Initiative's Notice of Intent to Circulate Petition states in part:  "Vote 'Yes' to repeal the special tax associated with FP-5.  The California Constitution  states, '*No local government may impose, extend, or increase any special tax unless and until that tax is submitted to the electorate and approved by a two-thirds vote.'*  Despite this clear language, the FP-5 special tax was imposed by elected representatives on one million county residents without their consent."

The Initiative's text states in part:  "The County's sidestep of the provisions of the California Constitution has victimized property owners whose parcels have been annexed and who are now required to pay an ever increasing (up to 3% per year) annual parcel tax they didn't vote on."

D. *The District's Petition for Writ of Mandate*

In February 2022, the District filed a petition for writ of mandate and complaint for injunctive and declaratory relief against the County Registrar.  The District alleged that Real Parties, as proponents of the Initiative, were violating the California Elections Code and case law by circulating an Initiative that did not include the full text of the Initiative, failed to attach or include relevant documents and information, and included material false and misleading information.  The District requested judicial relief to prevent the invalid Initiative from appearing on the June 2022 ballot.

Noting that the Initiative Petition sought to repeal the FP-5 special tax, the District alleged that "by failing to adequately or accurately inform petition signers of crucial details about the proposed repeal, and failing to include key documents that are expressly

7

referred to in the Initiative, Real Parties unlawfully deprived the District's voters of their rights to be sufficiently informed about what they were being asked to sign and ultimately, vote on." The District further alleged that Real Parties' willfully and knowingly misinformed the electorate by circulating the Initiative, which contained false statements and misrepresentations, in violation of section 18600, subdivision (b) and *San Francisco Forty-Niners v. Nishioka* (1999) 75 Cal.App.4th 637 (*Nishioka*).

The District alleges the Initiative contains the following false, misleading, and inaccurate information:

(1) "The California Constitution [article XIII C, § 2, (d)] states, '*No local government may impose, extend, or increase any special tax unless and until that tax is submitted to the electorate and approved by a two-thirds vote.*' Despite this clear language, the FP-5 special tax was imposed by elected representatives on one million county residents without their consent. . . . Citizens must follow the law and so must their representatives!!" (Initiative notice of intent.)

(2) "Even though the Constitution of California prohibits taxation without two-thirds voter approval, in 2020, the Fire District Board of Directors, without voter approval, imposed a tax on every parcel in FP-5 set at $157.26 for the year 2020-2021." (Initiative findings, section 1(a)(4).)

(3) "The County's sidestep of the provisions of the California Constitution has victimized property owners whose parcels have been annexed and who are now required to pay an ever increasing (up to 3% per year) annual parcel tax they

8

didn't vote on. Further, without a prohibition in place, additional victims and their properties will potentially be added to FP-5 and its tax without their vote of approval." (Initiative findings, section 1(a)(5).)

Based on these misrepresentations and misleading statements, the District alleged in the first cause of action for writ of mandate that it was entitled to a writ of mandate prohibiting the County Registrar from printing the Initiative on the ballot. The District alleged in the second cause of action for injunctive relief that the District was entitled to a temporary restraining order, preliminary injunction, and permanent injunction prohibiting the Registrar from taking any action that would cause the legally invalid Initiative to be placed on the ballot. The District alleged in the third cause of action that it is entitled to a declaration that the Initiative violates the law, that the Initiative is invalid, and that the Initiative should not be placed on the ballot.

On March 17, 2022, Real Parties filed opposition to the District's Writ Petition, a request for judicial notice, and declarations by each Real Party, stating they were not parties to *The Red Brennan Group* lawsuit and did not have any involvement with that case or "knowledge or understanding of the court's reasoning in its demurrer ruling." The District filed a reply arguing that Real Parties could not claim ignorance of *The Red Brennan Group* lawsuit or the court's finding in that action that the FP-5's special tax was legal, because The Red Brennan Group was the moving force behind Real Parties' Initiative.

9

On March 29, 2022, the trial court granted the District's Writ Petition on the grounds stated in the court's written tentative ruling, which states that the Initiative does not violate the "'full-text doctrine,'" but is invalid because it contains false and misleading information. The tentative further states: "The initiative implies that the tax is unconstitutional and was improperly adopted. . . . The court has already determined in a previous case that the annexation argument advanced as a ground for constitutional invalidity of the tax is incorrect. (*The Red Brennan Group, et al. v. The Board of Supervisors of San Berna[r]dino County et al.*, Case No. CIVDS-1826559.)"

The court added during the Writ Petition hearing that, "I don't think intent is required here. The question is whether this language is false or misleading. And I think it is for the reasons stated that it implies strongly the unconstitutionality of what was done previously" (imposing the existing FP-5 service tax on annexed parcels). The trial court also stated in its adopted tentative ruling that the Initiative did not violate the full text doctrine (§ 9304).

E. *Real Parties' Petition for Writ of Mandate*

On March 30, 2022, the day after the trial court ruled on the District's Writ Petition, Real Parties filed an emergency ex parte writ petition in this court, requesting reversal of the trial court's ruling and retention of the Initiative (also known as Measure Z) on the June 2022 ballot. The deadline for the Registrar to finalize the ballot printing for the June 2022 election was March 30, 2022, the date the official election materials were sent to the printer. On March 30, 2022, this court ordered the proceedings and order

10

on March 29, 2022, stayed pending this court's ruling on the District's Writ Petition on the merits. Thus, the trial court's order on March 29, 2022, barring printing the Initiative in the June 2022 ballot, was stayed.

On May 2, 2022, this court denied Real Parties' Writ Petition and lifted the stay imposed on March 30, 2022. This court stated in its order that it was taking judicial notice of the ruling on *The Red Brennan Group* lawsuit demurrer.

On May 31, 2022, the trial court entered judgment on the order granting the District's Writ Petition, invalidating the Initiative, and prohibiting enforcement of it or giving it legal effect.

In June 2022, Real Parties filed a notice of appeal of the May 31, 2022 order. In July 2022, the District filed a notice of cross-appeal of the May 31, 2022 order.

III.

DISCUSSION

Real Parties raise three key issues in this appeal:

(1) whether the Initiative contains false and misleading statements, either implied or express, invalidating the Initiative;

(2) whether a violation of section 18600 requires that false and misleading statements be made intentionally; and

(3) whether the ruling sustaining the demurrer in *The Red Brennan Group* lawsuit has binding precedential effect in this case, and whether Real Parties had notice of it.

11

A. *Standard of Review*

Generally, we review questions of law de novo (*City of Marina v. Board of Trustees of California State University* (2006) 39 Cal.4th 341, 355-356). We review factual findings for substantial evidence. (*City of San Buenaventura v. United Water Conservation District* (2022) 79 Cal.App.5th 110, 120 (*United Water*).)

When reviewing the trial court's ruling on a writ of mandate, the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial evidence. Where questions of law are presented, the appellate court conducts an independent review and does not defer to the trial court's decision. (*Evans v. Unemployment Ins. Appeals Bd.* (1985) 39 Cal.3d 398, 407; *Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 502.)

Since this appeal concerns the possible application of a constitutional provision enacted by initiative (Proposition 218), "our task is ascertaining the intent of the voters. 'When construing a constitutional provision enacted by initiative, the intent of the voters is the paramount consideration.' [Citation.] To determine intent, courts look first to the language of the provision, giving its words their ordinary meaning. If that language is clear in relation to the problem at hand, there is no need to go further. [Citation.] If, on the other hand, the language is ambiguous, we turn to extrinsic indicia of voter intent, particularly what the ballot pamphlet said about the initiative. [Citation.] [¶] In construing the language of an initiative, we consider not only the ordinary meaning of the

12

bare words, but how those words fit into the initiative as a whole. [Citations.]" (*Sunset Beach*, *supra*, 209 Cal.App.4th at p. 1189.)

Our review of the trial court's order that the Initiative is invalid is strictly circumscribed by the long-established rule "of according extraordinarily broad deference to the electorate's power to enact laws by initiative. The state constitutional right of initiative or referendum is 'one of the most precious rights of our democratic process.' [Citation.] These powers are reserved to the people, not granted to them. Thus, it is our duty to ""'jealously guard"'" these powers and construe the relevant constitutional provisions liberally in favor of the people's right to exercise the powers of initiative and referendum. [Citation.] An initiative measure '"must be upheld unless [its] unconstitutionality clearly, positively, and unmistakably appears."' [Citation.]" (*Pala Band of Mission Indians v. Board of Supervisors* (1997) 54 Cal.App.4th 565, 573.)

Here, the trial court entertained preelection review of Real Parties' Initiative, which was an initiative seeking to repeal a special tax under the Proposition 218 amendment to the California Constitution. Even though the trial court found that the Initiative was invalid and should not be placed on the ballot, it was too late to prevent it from being included on the ballot. As a result, the electorate voted on the Initiative and approved it. Nevertheless, the Initiative remains invalid under the trial court's preelection ruling, finding Proposition 218 does not apply and the Initiative contains false and misleading statements. Real Parties request this court to overturn the trial court's May 31, 2022, pre-election order deeming the Initiative invalid.

13

Our review of the Initiative requires this court to do so under the independent, de novo standard of review because the validity of the Initiative and whether Proposition 218 applies is a constitutional question. (*Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 441; see also *United Water*, *supra*, 79 Cal.App.5th at p. 118; *Evans v. Unemployment Ins. Appeals Bd.*, *supra*, 39 Cal.3d at p. 407.)

B. *Invalidity of Initiative Containing False and Misleading Statements*

The trial court invalidated the Initiative based on finding it contained false and misleading statements that implied the FP-5 special tax violated the California Constitution amendment, Proposition 218.

"'Through a series of initiatives—Proposition 13 in 1978, Proposition 218 in 1996, and Proposition 26 in 2010—California voters have "limit[ed] the authority of state and local governments to impose taxes without voter approval." [Citations.]' [Citation.]" (*United Water*, *supra*, 79 Cal.App.5th at p. 114.) "Proposition 218 added [to the California Constitution] article XIII C, which requires voter approval of all taxes imposed by local governments. [Citations.] It also 'tighten[ed] the two-thirds voter approval requirement for "special" taxes and assessments imposed by Proposition 13.' (*Brooktrails Township Community Services Dist. v. Board of Supervisors of Mendocino County* (2013) 218 Cal.App.4th 195, 197.)" (*United Water*, *supra*, 79 Cal.App.5th at p. 118.)

14

1. Section 18600

Real Parties contend the trial court erred in concluding the Initiative was invalid under section 18600, subdivision (b), based on the Initiative alleging false and misleading statements that the special tax violated Proposition 218.

Section 18600 provides in relevant part: "Every person is *guilty of a misdemeanor* who: [¶] . . . [¶] (b) *Willfully and knowingly* circulates, publishes, or exhibits any false statement or misrepresentation concerning the contents, purport or effect of any state or local initiative, referendum, or recall petition . . . , for the purpose of obtaining any signature to, or persuading or influencing any person to sign, that petition." (Italics added.)

Real Parties argue the District failed to establish a violation of section 18600 because there was no evidence of the requisite element of intent. We conclude to the contrary, as did the trial court, that there was no requirement in this case of proof of intent under section 18600.

First, we note that the trial court's order does not state it found the Initiative was invalid based on it violating section 18600. Second, section 18600 is not controlling. As the trial court correctly noted during the Writ Petition hearing, Real Parties assumed section 18600 was "the controlling statute, when in fact this is a statute that makes certain conduct a misdemeanor."

When the trial court asked for authority supporting the proposition that establishing intent was required, Real Parties' attorney acknowledged there was only one

15

published case on point, *Nishioka*, *supra*, 75 Cal.App.4th 637, and it was silent on whether a showing of intent is required. Real Parties' attorney merely argued that section 18600 requires intent, and therefore the trial court erred in finding the Initiative invalid because there was no evidence Real Parties had the requisite intent to circulate the Initiative, knowing it included false and misleading statements. When ruling that the Initiative was invalid, the trial court stated: "I don't think intent is required here. The question is whether this language is false or misleading." We agree.

A finding that there was a violation of section 18600 was not required here because this case does not allege that Real Parties committed a misdemeanor in violation of section 18600. Therefore a finding of intent under section 18600 is not required. As the trial court correctly noted, the issue here is whether the Initiative is invalid because it contains false or misleading information. The Elections Code and case law support the trial court's determination that an initiative may be found invalid if it contains language that is false or misleading, even in the absence of evidence of intent or of a violation of section 18600.

In *Nishioka*, the San Francisco Forty-Niners, a professional football team, filed a petition for writ of mandate in the trial court, seeking to invalidate an initiative petition to repeal initiative measures for construction of a new football stadium. The Forty-Niners argued the initiative petition contained false and misleading information, in violation of numerous provisions of the Elections Code. (*Nishioka*, *supra*, 75 Cal.App.4th at p. 642.) The trial court agreed and therefore ruled it was illegal and void. (*Id*. at pp. 639, 643.)

16

The proponents of the initiative petition appealed the trial court's writ petition order prohibiting the initiative from being placed on the ballot. (*Id*. at p. 639.)

The *Nishioka* court held the initiative petition contained undisputed, objective mistruths intended to mislead the voters and induce them into signing the petition, in violation of the Elections Code. Therefore the initiative petition was invalid and the Initiative could not be placed on the ballot. (*Nishioka*, *supra*, 75 Cal.App.4th at p. 650.) The *Nishioka* court stated that "an initiative petition which contains objectively inaccurate information and calculated untruths that substantially mislead and misinform a reasonable voter is unlawful under the Elections Code." (*Id*. at p. 639.) A writ may issue to prevent circulation of such an initiative petition containing undisputed falsehoods, but not as to expressions of opinion, nor to factual matters which are subject to question or dispute. (*Id*. at pp. 649-650.)

The *Nishioka* court clarified that proponents of an initiative petition do not have First Amendment rights to include false and misleading information in their petition. (*Nishioka*, *supra*, 75 Cal.App.4th at p. 648.) Therefore, issuance of a writ of mandate preventing the initiative petition from being qualified for a ballot or placed before the voters does not constitute an impermissible prior restraint on speech, in violation of the initiative petitioners' First Amendment rights. (*Id*. at p. 647.) As noted in *Nishioka*, "[a]n initiative petition fits the definition of expressive activity in a nonpublic forum, not the traditional public forum of unregulated political speech. The initiative petition with its notice of intention is not a handbill or campaign flyer—it is an official election

17

document subject to various restrictions by the Elections Code, including reasonable content requirements of truth." (*Id*. at p. 648.)

The *Nishioka* court further stated that, "[W]hile the right of free speech is one of the most precious rights to citizens of a free and open society, *it is not without limit* when the state Constitution provides it with a special forum for an initiative process in which voters are asked to sign a petition which ultimately may impact the community." (*Nishioka*, *supra*, 75 Cal.App.4th at p. 647 (italics added); see also *City of Riverside v. Stansbury* (2007) 155 Cal.App.4th 1582, 1592 [rejecting initiative proponent's contention that he had "an unfettered right to circulate a petition and to present it to the sovereign" because "there is no constitutional right to place an *invalid* initiative on the ballot"].)

The court in *Nishioka* held that the initiative petition violated the "rationale" of section 18600 by containing deliberately false and misleading information. (*Nishioka*, *supra*, 75 Cal.App.4th at p. 647.) The *Nishioka* court added in a footnote that, "In light of this conclusion, we need not reach the Forty-Niners' contention that the initiative petition violated other provisions of the Elections Code." (*Id*. at p. 647, fn. 9.) There was no discussion in *Nishioka* regarding whether intent to include false or misleading statements in the initiative petition was required. The *Nishioka* court merely stated that the trial court made a finding that the appellants violated section 18600 by making deliberately false statements. The *Nishioka* court deferred to the trial court's finding because it was supported by substantial evidence and the appellants conceded that their initiative petition contained false statements. (*Id*. at p. 645.)

18

Here, unlike in *Nishioka*, the trial court did not make a finding that the Initiative violated section 18600. The trial court stated in its order that the Initiative was invalid because it contained false and misleading statements and that a finding of intent under section 18600 was not required to invalidate the Initiative. Here, the "rationale" of section 18600 and other provisions in the Elections Code, as well as decisional and statutory law, support the trial court's determination that the Initiative is invalid because it contains materially false and misleading statements. A finding of a violation of section 18600's intent requirement was not required. Because section 18600 provided authority to prosecute a misdemeanor charge for violating section 18600, which was not charged in either the instant case or *Nishioka*, section 18600 merely supports the proposition that an initiative containing material false or misleading information is improper under the Elections Code, and is a valid ground for disqualification.

In this regard, the *Nishioka* court stated: "Although courts are charged to construe the Elections Code to favor the people's awesome initiative power, 'the statutes designed to protect the elector from confusing or misleading information should be enforced so as to guarantee the integrity of the process.'" (*Nishioka*, *supra*, 75 Cal.App.4th at p. 644.) The court in *Nishioka* noted that "our Supreme Court recognized this principle 65 years ago" in *Boyd v. Jordan* (1934) 1 Cal.2d 468, 475, in which the court concluded: "No elector can intelligently exercise his rights under the initiative law without a knowledge of the petition which he is asked to sign, and any legislation which will increase the facilities of the elector to acquire such information is well within the terms of the

19

Constitution permitting the enactment of legislation to facilitate [the initiative process]." (*Boyd v. Jordan*, *supra*, at p. 475; accord, *Nishioka*, *supra*, at p. 644.)

*Nishioka* notes that "[n]umerous decisions have supported the invalidation of initiative measures for Elections Code violations resulting in voter confusion or misinformation. (See, e.g., *Clark v. Jordan* (1936) 7 Cal.2d 248 [misleading short title in violation of Political Code]; *Mervyn's v. Reyes* (1998) 69 Cal.App.4th 93 [failure to include complete text of the initiative measure]; *Hebard v. Bybee* [(1998)] 65 Cal.App.4th 1331 [inaccurate and misleading title of referendum measure]; *Myers v. Patterson* [(1987)] 196 Cal.App.3d 130 [circulating petition without including notice of intention]; *Chase v. Brooks* [(1986)] 187 Cal.App.3d 657 [failure to include complete text of the initiative measure].)" (*Nishioka*, *supra*, 75 Cal.App.4th at pp. 644-645.)

As the court in *Nishioka* explains, the people "have a right to rely on the integrity of the initiative process from beginning to end. Because the initiative process bypasses the normal legislative process, safeguards are necessary to prevent abuses and provide for an informed electorate. Ordinary citizens with a sense of trust should be able to believe in the accuracy of what they are signing. Although the truthfulness of ideas may not always be recognizable, verifiable factual untruths are. When presented in that rare instance with facts which are conclusively and objectively untrue and mislead potential signers, the court fulfills its mandated duty under the Elections Code of safeguarding the integrity of the initiative process by its action." (*Nishioka*, *supra*, 75 Cal.App.4th at p. 649.) The court's action of invalidating Initiatives containing false and misleading

20

information thus "enhances the initiative process and promotes the confidence of the voters by preventing fraud on the electorate."  (*Id*. at p. 649.)

Here, a violation of section 18600, which provides the court with authority to charge and prosecute a misdemeanor offense, was not required for the trial court to invalidate the Initiative.  The record shows that the trial court did not make such a finding, and it was not required to do so when ordering the Initiative invalid, because the trial court appropriately found that the Initiative contained material false and misleading statements, as explained below.

### 2. False and Misleading Statements

Real Parties contend the trial court erred in invalidating the Initiative because it does not contain any express or implied objective false or misleading facts.  We disagree. The Initiative states that the District's FP-5 special tax should be repealed because landowners of parcels in recently annexed territories did not vote for the special tax.  The initiative implies that the special tax therefore violated Proposition 218, which requires two-thirds voter approval for special taxes.

Misleading statements in the Initiative, implying unconstitutionality of the special tax, include statements in the Initiative petition's notice and text.  The Initiative notice of intent states:  "Vote 'Yes' to repeal the special tax associated with FP-5.  The California Constitution states, '*No local government may impose, extend, or increase any special tax unless and until that tax is submitted to the electorate and approved by a two-thirds vote.*'  Despite this clear language, the FP-5 special tax was imposed by elected

21

representatives on one million county residents without their consent. A 'YES' vote will repeal the tax, leave money in your pocket, and send a message to politicians. Citizens must follow the law and so must their representatives!!" (Italics in original.)

The Initiative text further states in part: "[T]he County added additional areas to FP-5 expanding the parcel tax burden without a vote of the people living in those add-on areas. . . . [¶] . . . Even though the Constitution of California prohibits taxation without two-thirds voter approval, in 2020, the Fire District Board of Directors, without voter approval, imposed a tax on every parcel in FP-5 set at $157.26 for the year 2020-2021. [¶] . . . The County's sidestep of the provisions of the California Constitution has victimized property owners whose parcels have been annexed and who are now required to pay an ever increasing (up to 3% per year) annual parcel tax they didn't vote on."

The Initiative notice and text contain implied false and misleading statements that (1) Proposition 218 applies to the FP-5 special tax and requires a two-thirds vote of approval and (2) the special tax is illegal and unconstitutional under Proposition 218 because the annexed property owners did not have the opportunity to vote on the special tax. The Initiative implies these facts are irrefutable, when, in fact, they are objectively verifiable as incorrect based on well-founded legal authority. There is well-established law that Proposition 218 does not apply to the FP-5 special tax and it is constitutional under *Nishioka*, *Sunset Beach*, *supra*, 209 Cal.App.4th 1195, *Metropolitan Water District v. Dorff* (1979) 98 Cal.App.3d 109 (*Dorff*), Government Code section 57330, and

22

Elections Code sections 18600 and 9092.[3] This legal authority was accessible to the Real Parties, either through conducting legal research or through representation by their attorneys.

As the court in *Sunset Beach* stated, any doubt about the constitutionality of a special tax levied on property owners by annexation, "is removed by examination of the history behind Proposition 218. Its proponents simply never intended it to apply to annexations." (*Sunset Beach*, *supra*, 209 Cal.App.4th at p. 1195.) If the annexation is valid, the tax is valid. (*Sunset Beach*, *supra*, at pp. 1195, 1197.)[4]

In support of this proposition, the *Sunset Beach* court cited *Dorff*, *supra*, 98 Cal.App.3d 109, explaining: "[T]he existence of the *Dorff* case, decided in 1979, shows plainly that Proposition 218 was not intended to apply to the tax effects of annexations. More than a decade and a half *prior* to Proposition 218, *Dorff* directly held that Proposition 13 did not preclude the application of a preexisting property tax to land previously not part of an annexing water district to pay for that water district's outstanding obligations. [¶] . . . [I]n *Dorff* the *effect* of the annexation was to apply a preexisting tax to property previously free of that tax." (*Sunset Beach*, *supra*, 209 Cal.App.4th at p. 1197, citing *Dorff*, *supra*, at p. 115.)

---

[3] Section 9092 states that any elector may seek a writ of mandate requiring false or misleading statements to be amended or deleted from the state voter information guide.

[4] Real Parties do not contest the validity of the FTP-5 annexation.

The court in *Sunset Beach* stated that "*Dorff* recognized that annexations could have possible adverse tax effects on property being annexed, and these adverse tax effects *were known as early as 1979,* and courts had held them not to offend Proposition 13. Had Proposition 218 been intended to satisfy or avoid the effects of *Dorff,* we would have expected *some* attempt somewhere in Proposition 218 to address the issue. We have found none." (*Sunset Beach*, *supra*, 209 Cal.App.4th at pp. 1197-1198, citing *Dorff, supra*, 98 Cal.App.3d 109.) It is also unlikely that the Legislature would have enacted Government Code section 57330 in 1993, which states that "[a]ny territory annexed to a city or district shall be subject to the levying or fixing and collection of any previously authorized taxes, benefit assessments, fees, or charges of the city or district." (Gov. Code, § 57330.)

The Initiative statements convey the misleading and false implied fact that Proposition 218 applies to the special tax, and the tax is therefore unconstitutional because the owners of FP-5 annexed property did not vote on the special tax and approve it by a two-thirds vote. Real Parties argue that, "[b]ecause what may be constitutional today may be unconstitutional tomorrow," the facts stated in the Initiative are not objectively verifiable facts which subject the Initiative to disqualification. We are not persuaded by this argument. At the time the Initiative was submitted and circulated, the weight of legal authority established that Proposition 218 did not apply to a special tax on annexed property and, therefore, the special tax was constitutional. Nevertheless, the

24

Initiative falsely implied that it was undisputed the special tax was unconstitutional under Proposition 218 because the annexed property owners did not vote on the special tax.

Citing *Gregory v. McDonnell Douglas Corp.* (1976) 17 Cal.3d 596, Real Parties argue the Initiative statements regarding the unconstitutionality of the special tax do not state objective, verifiable false or misleading facts because they merely state legal opinion. We disagree. In *Gregory*, the court held that statements of opinion, as opposed to statements of fact, are not actionable in defamation cases. (*Id*. at pp. 603-604.) *Gregory* is not on point. It is a defamation action, in which "[t]he gist of the statements . . . is that the plaintiffs, union officers, were apparently willing to sacrifice the interests of the members of their union to further their own political aspirations and personal ambitions. The language of both statements is cautiously phrased in terms of apparency. More importantly, the charges are of the kind typically generated in the 'economic give-and-take' of a spirited labor dispute in which the judgment, loyalties and subjective motives of rivals are reciprocally attacked and defended, frequently with considerable heat." (*Id*. at p. 603.)

Although it is true the court may change its view as to how a statute, case, or the constitution is construed, this does not preclude well-established law from constituting objectively verifiable fact. Otherwise, an initiative could freely misstate law and mislead voters into approving an initiative based on unsupported, misleading misstatements of the law without any adverse repercussions. The electorate would have no recourse or protection from false, misleading statements of law, and voters would not be able to rely

25

on the veracity of statements of law made in initiatives. This would result in interference with the State's "compelling regulatory interest in preserving the integrity of the initiative process from intentional falsehoods designed to mislead voters into qualifying a measure for the ballot. . . . [V]oters have a right to rely on the integrity of the initiative process and the accuracy of the petition which they properly believe complies with Elections Code requirements." (*Nishioka*, *supra*, 75 Cal.App.4th at p. 648.)

In determining whether statements are false or misleading, "courts look to whether the challenged statement is subject to verifiability, as distinct from 'typical hyperbole and opinionated comments common to political debate.' (See [*Nishioka*], *supra*, 75 Cal.App.4th at p. 649.) An 'outright falsehood' or a statement that is 'objectively untrue' may be stricken. [Citation.] We need only add that context may show that a statement that, in one sense, can be said to be literally true can still be materially misleading; hence, the Legislature did not indulge in redundancy when it used both words. On the other hand, the standard, as defined by the Legislature, is necessarily a high one: Courts may intervene *only* if clear and convincing evidence shows the statement to be false or misleading." (*Huntington Beach City Council v. Superior Court* (2002) 94 Cal.App.4th 1417, 1432.)

We disagree with Real Parties that *Chavez v. Citizens for Fair Farm Labor Law* (1978) 84 Cal.App.3d 77, is on all fours here on the holding that the misleading statements were opinion, not fact. *Chavez* is distinguishable because, here, unlike in *Chavez*, there is no conflicting decisional or statutory law on the constitutionality of a

26

special tax on annexed property.  The legal issue, thus, is not open to several reasonable interpretations under decisional law.  (*Id*. at p. 82.)

Even if the unconstitutionality of the FP-5 special tax is subject to question or dispute, the Initiative is misleading because it implies the special tax is unconstitutional as a matter of undisputed law, when there was strong legal authority to the contrary. There is no disclosure that there was any case law or statutory law establishing that the special tax is actually lawful and constitutional.  In effect, the Initiative left the electorate in the dark in this significant regard by not disclosing that the weight of the law established that the special tax is constitutional.  The Initiative, instead, mislead the electorate by stating implied "misleading untruths masquerading as facts."  (*Nishioka*, *supra*, 75 Cal.App.4th at p. 649.)

We thus conclude the trial court's order granting the District's Writ Petition and invalidating the Initiative was proper because the Initiative stated material, objectively false and misleading facts.  By invalidating the Initiative, the trial court's order "enhances the initiative process and promotes the confidence of the voters by preventing fraud on the electorate."  (*Nishioka*, *supra*, 75 Cal.App.4th at p. 649.)

### 3. *The Red Brennan Group* Lawsuit Demurrer Ruling

The trial court cited *The Red Brennan Group* case in support of its ruling granting the District's Writ Petition invalidating the Initiative.  In doing so, the trial court noted that "[t]he court has already determined in a previous case [(*The Red Brennan Group*

case)] that the annexation argument advanced as a ground for constitutional invalidity of the tax is incorrect."

Prior to circulating the Initiative in 2021 and 2022, the trial court in *The Red Brennan Group* lawsuit rejected the plaintiffs' constitutional challenge to the FP-5 special tax as unfounded under *Sunset Beach*, *supra*, 209 Cal.App.4th at pages 1194-1195. The trial court stated in its detailed written demurrer ruling that "in the current litigation, Plaintiffs' claims are essentially a challenge to the imposition of the special tax through the operation of Government Code section 57330. However, as held in *Sunset Beach*, taxes 'incident to annexations' are not subject to the constitutional requirement of voter approval before said taxes are imposed. . . . [T]he sweeping pronouncement of *Sunset Beach* appears to be all inclusive: Proposition 218 simply does not apply to annexations. Therefore, if the annexation is valid, perforce the tax is valid." In a footnote in the demurrer ruling, the trial court noted that "Government Code section 57330 also addresses the issue with respect to districts: 'Any territory annexed to a city or district shall be subject to the levying or fixing and collection of any previously authorized taxes, benefit assessments, fees, or charges of the city or district.'"

As Real Parties argue, the ruling on the demurrer in *The Red Brennan Group* lawsuit does not provide binding authority in this case because Real Parties were not parties in the case and the demurrer ruling was not appealed or a published decision.

However, based on the record in the instant appeal, it can be reasonably inferred that Real Parties and their attorneys were aware of *The Red Brennan Group* lawsuit and

28

demurrer decision. Real Party Ruth Musser-Lopez acknowledged in her declaration that she was aware of *The Red Brennan Group* lawsuit, attended one hearing in the case, and was aware of the outcome of the case, although she claims she did not have any knowledge or understanding of the demurrer ruling resulting in dismissal of the case. The record also contains materials showing Red Brennan Group's involvement in initiative efforts to repeal the FP-5 special tax and was a major moving force behind the Initiative. Because The Red Brennan Group was instrumental in backing the Initiative, it can be reasonably inferred that Real Parties or their attorneys knew about the demurrer ruling, in which the trial court concluded the FP-5 special tax was constitutional under *Sunset Beach*, *supra*, 209 Cal.App.4th 1182, and Government Code section 57330.

But regardless of whether Real Parties were aware of the demurrer ruling in *The Red Brennan Group* lawsuit, the demurrer ruling demonstrates that the state of the law when the Initiative was drafted and circulated, strongly, if not definitively, established that the FP-5 special tax was constitutional. Real Parties have not cited any persuasive decisional or statutory law to the contrary.

Because we conclude the trial court properly invalidated the Initiative as invalid on the ground it contains objectively false and misleading statements, the District's cross-appeal, raising an additional ground for disqualifying the Initiative, is moot.

29

IV.

DISPOSITION[5]

The trial court order finding the Initiative invalid and granting the District's Writ Petition, is affirmed.

We therefore deem as moot and dismiss the District's cross-appeal, because it solely raises an alternative ground (the full-text doctrine) for disqualifying the Initiative, and there is no need to address this alternative ground.

The District is awarded its costs on the appeal and cross-appeal.

CERTIFIED FOR PUBLICATION

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.

---

[5] Real Parties' unopposed request for judicial notice, filed on October 5, 2022, is granted. (Evid. Code, §§ 452, subds. (a), (c), (h); 459, subd. (a).)